William A. Kershaw (State Bar No. 057486)
Lyle W. Cook (State Bar No. 148914)
Stuart C. Talley (State Bar No. 180374)
Ian J. Barlow (State Bar. No. 262213)
KERSHAW, CUTTER & RATINOFF, LLP
401 Watt Avenue
Sacramento, California  95864
Telephone: (916) 448-9800
Facsimile:  (916) 669-4499
Email: wkershaw@kcrlegal.com
Email: lcook@kcrlegal.com
Email: stalley@kcrlegal.com
Email: ibarlow@kcrlegal.com

*Attorneys for Plaintiffs and the Class*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH CORTEZ, BRAD ASBURY, MARGARET FELTS, and BELEN DURFEE, and  individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>McCLATCHY NEWSPAPERS, INC.; and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO. 2:15-cv-01891-TLN-EFB<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND**<br><br><br>Date:  November 5, 2015<br>Time:  2:00 p.m.<br>Courtroom: 2<br>Judge: Hon. Troy L. Nunley<br><br>Complaint Filed: October 2, 2014<br>Action Removed: September 8, 2015 |

**<u>TABLE OF CONTENTS</u>**

Page(s)

I.      INTRODUCTION ........................................................................................... 1

II.     FACTUAL ALLEGATIONS .......................................................................... 2

III.    PROCEDURAL HISTORY............................................................................. 4

IV.     LEGAL STANDARD...................................................................................... 5

V.      ARGUMENT .................................................................................................. 6

        A.      The Proposed Class Plead by Plaintiffs Does Not Include Non-California

                Residents ............................................................................................. 6

        B.      The Amount in Controversy Requirement Is Not Satisfied................................. 11

        C.      Defendant Has Waived Its Right to Removal and Removal Is Untimely............. 12

        D.      Plaintiffs Request For Reimbursement of Costs ..................................... 13

VI.     CONCLUSION................................................................................................ 15

## <u>TABLE OF AUTHORITIES</u>

### CASES

Page(s)

*Abrego v. Dow Chem. Co.*,
   443 F.3d 676 (9th Cir. 2006)................................................................. 6

*Benko v. Quality Loan Serv. Corp.*,
   789 F.3d 1111 (9th Cir. 2015)........................................................... 9,11

*Boggs v. Lewis*,
   863 F.2d 662 (9th Cir. 1988).............................................................. 5

*Bolivar Sand Co. v. Allied Equipment, Inc.*,
   631 F. Supp. 171 (W.D. Tenn. 1986)................................................. 13

*Chicago Title & Trust Co. v. Whitney Stores, Inc.*,
   583 F. Supp. 575 (N.D. Ill. 1984) ...................................................... 13

*Deaver v. BBVA Compass Consulting & Benefits, Inc.*, No. 13-CV-00222 JSC,
   2014 U.S. Dist. LEXIS 72074, 2014 WL 2199645 (N.D. Cal. May 27, 2014) .......... 11,12

*Dittmar v. Costco Wholesale Corp.*, No. 14-CV-1156-LAB-JLB,
   2014 U.S. Dist. LEXIS 156666 (S.D. Cal. Nov. 5, 2014) ................................. 12

*Emrich v. Touche Ross & Co.*,
   846 F.2d 1190 (9th Cir. 1988)  ........................................................... 5

*Ettlin v. Harris*, No. SACV 13-1515-DOC (JPRx),
   2013 U.S. Dist. LEXIS 170526 (C.D. Cal. Nov. 22, 2013)............................ 12

*Gaus v. Miles, Inc.*,
   980 F.2d 564 (9th Cir. 1992) ............................................................. 5

*Gibson v. Chrysler Corp.*,
   261 F.3d 927 (9th Cir. 2001).............................................................. 11

*Goines v. Barclays Capital Real Estate, Inc.*, No. CV 12-08656 SJO (CWx),
   2012 U.S. Dist. LEXIS 155595 (C.D. Cal. Oct. 29, 2012) ............................. 7

*Kanter v. Warner-Lambert Co.*,
   265 F.3d 853 (9th Cir. 2001)............................................................... 7

*Kiddie Rides U.S.A. v. Elektro-Mobiltechnik GMGH*,
   579 F. Supp. 1476 (C.D. Ill. 1984)...................................................... 13

*Libhart v. Santa Monica Dairy Co.*,
   592 F.2d 1062 (9th Cir. 1979) ........................................................... 5

*McKinnon v. Doctor's Assoc., Inc.*,
   769 F. Supp. 216 (E.D. Mich. 1991).................................................... 13

*Moore v. Permanente Med. Group*,
   981 F.2d 443 (9th Cir. 1992)........................................................... 12,14

## TABLE OF AUTHORITIES, Cont.

Page(s)

*Nishimoto v. Federman-Bachrach & Assocs.*,
 903 F.2d 709 (9th Cir. 1990) ........................................................... 5

*Quesada v. Herb Thyme Farms, Inc.*, No. CV 11-00016 ODW(SSx),
 2011 U.S. Dist. LEXIS 37697 (C.D. Cal. Mar. 28, 2011) ............................... 10

*Rea v. Michaels Stores Inc.*,
 742 F.3d 1234 (9th Cir. 2014)........................................................ 11

*Resolution Trust Corp. v. Bayside Developers*,
 43 F.3d 1230 (9th Cir. 1994) ....................................................... 12

*Rodriguez v. AT & T Mobility Servs. LLC*,
 728 F.3d 975 (9th Cir. 2013)........................................................ 11

*Romo v. Panda Rest. Group*, No. CV 12-00996 GAF (OPx),
 2012 U.S. Dist. LEXIS 128689 (C.D. Cal. Sept. 7, 2012)............................ 9,10

*Rotenberg v. Brain Research Labs LLC*, No. C-09-2914 SC,
 2009 U.S. Dist. LEXIS 91335 (N.D. Cal. Sept. 15, 2009)   ......................... 10

*State Farm Mut. Auto. Ins. Co. v. Dyer*,
 19 F.3d 514 (10th Cir. 1994) ........................................................ 7

*Takeda v. Northwestern Nat'l Life Ins. Co.*,
 765 F.2d 815 (9th Cir. 1985)........................................................ 5

*Walker v. Motricity Inc.*,
 627 F. Supp. 2d 1137 (N.D. Cal. 2009) ......................................... 14

## STATUTES

28 U.S.C. § 1332(d) ...................................................................... *passim*
28 U.S.C. § 1446(b)(3)............................................................... 12
28 U.S.C. § 1447(c) ................................................................. 13

California Business & Professions Code
 §§ 17200, *et seq.* ................................................................. 4
 §§ 17600, *et seq.* ............................................................... 3,6

California Civil Code
 §§ 1750, *et seq.* ................................................................. 4

1    **I.     INTRODUCTION**

2         This case is a California class action that seeks to remedy fraudulent and deceptive billing

3    practices for the home delivery of local newspapers to California subscribers.  Plaintiffs Joseph

4    Cortez, Brad Asbury, Margaret Felts, and Belen Durfee ("Plaintiffs") are asserting violations of

5    California statutes on behalf of a putative class that is expressly limited to "persons in

6    California."  (Second Am. Class Action Compl. ("SAC") ¶ 48.)  The defendant, McClatchy

7    Newspapers, Inc. ("Defendant" or "McClatchy"), is a California citizen with headquarters in

8    Sacramento, California.  Furthermore, Plaintiffs' claims relate to subscriptions for local

9    newspapers that serve Sacramento, Merced, Modesto, Fresno and San Luis Obispo.  This case

10   does not extend beyond California.

11        Despite this, the defendant asserts diversity jurisdiction under the Class Action Fairness

12   Act ("CAFA").  It does this my redefining the class alleged in plaintiff's complaint to encompass

13   individuals who were once California residents and moved out of the state.  It then asserts that

14   since a single former California subscriber moved outside the state, there is diversity under

15   CAFA.  Defendant is wrong.

16        First, the subscriber presented by the Defendant—Catherine Murphy—is *not a putative*

17   *class member*.  Defendant attempts to gerrymander the boundaries of the proposed class

18   definition by rewording it.  It argues that Plaintiffs' proposed class consists of "all persons who

19   subscribed to McClatchy's newspapers in California . . . ."  (Notice of Removal 6.)  However,

20   that is not how Plaintiffs defined the proposed class.  Plaintiffs' putative class definition consists

21   of "[a]ll persons *in California* who subscribed" (SAC ¶ 48 (emphasis added)); it does not consist

22   of "all persons who *subscribed in California*."  The placement of the phrase "in California" in the

23   proposed class definition was intentional and significantly changes the scope of the class based on

24   what it modifies.  As a result, no foreign resident, including Ms. Murphy, is part of the proposed

25   class and minimal diversity is not satisfied under CAFA.

26        In addition, even if the Court adopted Defendant's manufactured class definition, the case

27   still belongs in state court since it satisfies the "local controversy" and "home state" exceptions to

28   CAFA.  Under the home state exception, CAFA jurisdiction is improper if two-thirds of the class

-1-

and the primary defendant are citizens of the same state.  In other words, for Defendant to properly invoke jurisdiction it must show that more than one-third of the class members "who subscribed in California" have permanently left the state and now reside elsewhere.  However, it is common sense to anyone who lives in California that it has not experienced the type of mass migration that would be necessary for Defendant to establish jurisdiction.  To be sure, Plaintiffs have retained an expert who confirms that this migration has not occurred.  Furthermore, under the local controversy exception to CAFA, jurisdiction is not warranted since significant relief is sought by class members from McClatchy, McClatchy's conduct forms the basis of the claims asserted by the class, McClatchy is a California citizen and the principal injuries at issue in this case were incurred in California.  There have also not been any identical or similar cases filed in California within the previous three years.

Second, Defendant's claim that the amount in controversy is satisfied under CAFA is entirely speculative and without any evidentiary support.  Defendant has failed to properly show that the amount in controversy requirement has been satisfied.

Finally, the Defendant's Notice of Removal is untimely and its right to removal has been waived.  This case was pending in state court for almost a year before removal was sought and during this time period, Defendant filed two demurrers, received rulings on merits based issues, and engaged in extensive discovery.  Defendant is clearly forum shopping after receiving rulings in state court that were not in its favor.  This is improper.

For the reasons discussed below, Plaintiffs' motion to remand should be granted and Plaintiffs should be reimbursed for all costs associated with preparing this motion.

## II.  FACTUAL ALLEGATIONS

Defendant owns several newspapers throughout California, including the *Sacramento Bee*, *Modesto Bee*, *Fresno Bee*, *The Tribune* and the *Merced Sun-Star*.  (SAC ¶¶ 1, 17.)  These are local newspapers that are printed, delivered to and read by California citizens in the California cities of Sacramento, Modesto, Fresno, Merced and San Luis Obispo.  To enroll subscribers, the Defendant publishes advertisements—focused in these local markets—asking consumers to subscribe for a specified "subscription period" lasting from one month to a year.  Plaintiffs allege

-2-

that Defendant engages in four separate practices that are false, misleading, and illegal in connection with the sale of its newspaper subscriptions.

First, the Defendant solicits consumers through promotional materials that seek home delivery newspaper subscriptions for a specified subscription period lasting from 5 to 52 weeks. If a consumer pays for the subscription by credit card, the Defendant will automatically renew the subscription at the end of the chosen subscription period. However, the promotional materials are misleading and fail to adequately disclose this automatic renewal policy. Also, the Defendant's automatic renewal policy is illegal since it fails to provide the disclosures required under the California Automatic Renewal Law, Cal. Bus. & Prof. Code §§ 17600, *et seq*. ("ARL"). (SAC ¶ 2.)

Second, in circumstances where the Defendant does not have a valid credit card or the subscriber pays by check, the Defendant has a practice of continuing to deliver newspapers to the consumer's home even though their subscription period has ended. After a period of time, the Defendant will stop delivering these post-subscription newspapers and then send the consumer a bill for the newspapers that were delivered after the expiration of the subscription period. If the consumer does not pay the bill, the account will be sent to collections. Hence, when a subscriber signs up for a specified subscription period as indicated in the Defendant's promotional materials, they are actually charged for a much longer period. This practice of providing a "continuous service" without appropriate disclosures is misleading and expressly violates the terms of the ARL. (SAC ¶ 3.)

Third, in circumstances where a consumer receives a bill for newspapers delivered after the expiration of the initial subscription period (as described above) and contacts the Defendant, they are told that the Defendant will "waive" the amount charged for the post-subscription newspapers if the consumer renews their subscription for another period. However, what the consumer is not told is that the Defendant will backdate the start date of the new subscription to the date the previous subscription expired. As such, the consumer actually receives fewer newspapers than was represented and the amount charged for the unwanted newspapers was never actually "waived." (SAC ¶ 4.)

-3-

Finally, the promotional materials provided by the Defendant falsely convey the length of subscription periods since the Defendant has a policy of reducing the period as a result of charging a "special edition premium." Specifically, the Defendant has designated 9 days a year where "special edition" newspapers are delivered to subscribers. It then charges a $1 premium for each of these special editions. Instead of including this extra $9 in the subscription price, the Defendant simply reduces the consumer's subscription period to recoup the $9 charge. Consumers are not given the option of refusing delivery of the "special edition" newspapers. For example, if a consumer signed up for a 52 week subscription at a rate of $1 per week, their subscription would not expire 52 weeks from the date the subscription was purchased. Instead, it would expire 43 weeks after it was purchased so that the Defendant could recoup the $9 special edition premium charges. The promotional materials disseminated by the Defendant do not clearly explain this policy and appear to be intentionally designed to mislead consumers into believing that their subscription period is for longer than represented. (SAC ¶ 5.)

Plaintiff alleges that all of the business practices outlined above constitute false and deceptive advertising in violation of the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*. ("CLRA") and California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*. ("UCL"). Also, the practices violate the terms of California's Automatic Renewal Law, which expressly prohibits the conduct outlined above.

### III.   PROCEDURAL HISTORY

This case was originally filed in Sacramento Superior Court a little over a year ago on October 2, 2014. Defendant then filed a demurrer that was overruled with respect to Plaintiff's claims under the CLRA and, with respect to the other causes of action, the court granted leave to amend. Pursuant to the court's order, Plaintiff filed a First Amended Complaint ("FAC") on April 24, 2015. Defendant filed a demurrer to the FAC on May 11, 2015.

After filing the FAC, Plaintiff's counsel was contacted by three additional individuals who desired to serve as class representatives in this action. Plaintiff also became aware of other billing practices that support claims under the CLRA and UCL. Accordingly, on July 7, 2015, Plaintiff filed an unopposed motion for leave to file a SAC. The motion was granted and Plaintiffs filed

1   their SAC on July 30, 2015.

2          During the time period this case was pending in Sacramento County Superior Court, the

3   parties engaged in extensive written discovery, a document exchange, and were in the process of

4   scheduling depositions.  In the written discovery served by Plaintiffs and during the meet and

5   confer process, it was made clear by Plaintiffs that the class they sought to certify only included

6   California consumers.  Nevertheless, on September 8, 2015—almost a year into the state court

7   litigation—Defendant removed this case to federal court.[1]  A week later, Defendant filed a motion

8   to dismiss.  (Dkt. No. 4.)[2]

9   **IV.    LEGAL STANDARD**

10          The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction"

11   and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the

12   first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis*, 863

13   F.2d 662, 663 (9th Cir. 1988), *Takeda v. Northwestern Nat'l Life Ins. Co.*, 765 F.2d 815, 818 (9th

14   Cir. 1985), and *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)).  The

15   "'strong presumption' against removal jurisdiction means that the defendant always has the

16   burden of establishing that removal is proper."  *Gaus*, 980 F.2d at 566 (citing *Nishimoto v.

17   Federman-Bachrach & Assocs.*, 903 F.2d 709, 712 n.3 (9th Cir. 1990); *Emrich v. Touche Ross &

18   Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988)).

19          If his allegations of jurisdictional facts are challenged by his adversary in any
20   appropriate manner, [the party asserting jurisdiction] must support them by
     competent proof.  And where they are not so challenged the court may still insist
21   that the jurisdictional facts be established or the case be dismissed, *and for that
     purpose the court may demand that the party alleging jurisdiction justify his
22   allegations by a preponderance of evidence*.

23   *Gaus*, 980 F.2d at 567 (emphasis in the original).  In addition, the Ninth Circuit has confirmed

24   that CAFA does not disturb the traditional rule that the burden of establishing removal

25

26   [1]  Declaration of Stuart C. Talley in Support of Plaintiffs' Motion to Remand filed herewith ("Talley
     Decl.") at ¶¶ 3-4.

27

28   [2]  Plaintiffs request that the Court stay or defer Defendant's motion to dismiss pending resolution of the
     jurisdictional issues presented by Defendant's removal, and contested by this motion.

jurisdiction is on the proponent of federal jurisdiction.  *Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006) ("We . . . hold that under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction.").

Under CAFA, there must be minimal diversity between the defendant and at least one member of the class:

> (2) The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $ 5,000,000, exclusive of interest and costs, and is a class action in which—
>
> > (A) any member of a class of plaintiffs is a citizen of a State different from any defendant;
> >
> > (B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or
> >
> > (C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state.

28 U.S.C. § 1332(d)(2).

## V.  **ARGUMENT**

### A.  **The Proposed Class Plead by Plaintiffs Does Not Include Non-California Residents**

In an effort to satisfy minimal diversity under CAFA, Defendant submitted a declaration from Catherine Murphy, a former *Sacramento Bee* subscriber who relocated to Florida from California in 2011.  (Decl. of Catherine Murphy ("Murphy Decl.") [Dkt. No. 1-5].)  However, Ms. Murphy is *not* a class member.  Her putative class membership ended when she moved to Florida.

Specifically, Plaintiffs' proposed class definition *only* includes Californians.  To be sure, Plaintiffs' proposed class definition is limited to:  "All persons *in California* who subscribed" to Defendant's newspapers.  (SAC ¶ 48.)  It is intended to exclude former Californians who subscribed to Defendant's newspapers as well as any current or former out-of-state subscribers.

Defendant's removal efforts depend upon a twisted reading and rearrangement of Plaintiffs' class definition.  To that end, Defendant misrepresents in its Notice of Removal that

"by alleging a putative class of all persons who subscribed to McClatchy's newspapers in California, Plaintiffs' Second Amended Complaint does not foreclose the inclusion of non-California citizens in the class . . . ." (Notice of Removal 6-7 [Dkt. No. 1].)  However, the scope of the class is dramatically altered by re-locating the phrase "in California" from "all persons *in California* who subscribed" (Plaintiffs' proposed class definition) to "all persons who subscribed *in California*" (Defendant's interpretation of Plaintiff's proposed class definition).  Plaintiffs' proposed class is comprised exclusively of *current* Californians.  By definition, if a person is no longer in California but subscribed to Defendant's newspapers—as with Ms. Murphy—that person is not in the class.

Plaintiffs' claims and express allegations further demonstrate that the scope of Plaintiffs' proposed class is limited to individuals residing in California.  First, this case involves *home delivery subscriptions to local newspapers*—such as the *Sacramento Bee, the Modesto Bee*, and the *Fresno Bee*—that are owned and operated by a company that has its principle place of business in Sacramento, California.  (*See*, *e.g.*, SAC ¶¶ 1, 16-17.)  Also, all of the named Plaintiffs are residents of California (*id.* ¶¶ 8-11) and bring this lawsuit on behalf of "similarly situated" individuals (*see*, *e.g.*, SAC at p. 1).  Without evidence demonstrating that the named Plaintiffs and those that they seek to represent are not California citizens, residency is *prima facie* evidence of citizenship.  *See*, *e.g.*, *Goines v. Barclays Capital Real Estate, Inc.*, No. CV 12-08656 SJO (CWx), 2012 U.S. Dist. LEXIS 155595, at *4 (C.D. Cal. Oct. 29, 2012) ("Plaintiff is an individual residing in California . . . For diversity purposes, an individual is a 'citizen' of the state where he or she is domiciled.  A person's residence can be prima facie evidence of citizenship.  In the absence of any evidence to the contrary, the Court finds that Plaintiff is a citizen of California based on the prima facie showing of her residence.") (citing *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) and *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994)).

Ms. Murphy is not a putative class member and her Florida citizenship does not trigger minimal diversity under CAFA.  Accordingly, the minimal diversity requirement is not satisfied and this case should be remanded.

1              **1.      The "Local Controversy" and "Home State" Exceptions to CAFA**

2                        **Apply**

3          Even if the Court adopted the Defendant's revised class definition so that it includes

4    people who subscribed in California but then left the state, jurisdiction is still improper under the

5    "local controversy" and "home state" exceptions to CAFA.   Under the local controversy

6    exception, a district court "shall" decline to exercise jurisdiction over a class action if the

7    following conditions are met:

8          (I)  greater than two-thirds of the members of all proposed plaintiff classes in the
9          aggregate are citizens of the State in which the action was originally filed;

10         (II)  at least 1 defendant is a defendant--

11              (aa) from whom significant relief is sought by members of the plaintiff
12              class;

13              (bb) whose alleged conduct forms a significant basis for the claims asserted
               by the proposed plaintiff class; and

14
               (cc) who is a citizen of the State in which the action was originally filed;
15
16              and

17         (III)  principal injuries resulting from the alleged conduct or any related conduct of
           each defendant were incurred in the State in which the action was originally filed;
18         and

19         (ii)  during the 3-year period preceding the filing of that class action, no other class
           action has been filed asserting the same or similar factual allegations against any
20         of the defendants on behalf of the same or other persons;

21   28 U.S.C. § 1332(d)(4)(A).

22         The local controversy exception is

23
           'intended to respond to concerns that class actions with a truly local focus should
24         not be moved to federal court under this legislation because state courts have a
           strong interest in adjudicating such disputes . . . [A] federal court should bear in
25         mind that the purpose of each of these criteria is to identify a truly local
           controversy – a controversy that uniquely affects a particular locality to the
26         exclusion of all others.'

27

28

1    *Benko v. Quality Loan Serv. Corp.*, 789 F.3d 1111, 1119 (9th Cir. 2015) (citation omitted)

2    (alteration in the original).  Alternatively, under the home state exception, a district court "shall"

3    decline to exercise jurisdiction if "two-thirds or more of the members of all proposed plaintiff

4    classes in the aggregate, and the primary defendants, are citizens of the State in which the action

5    was originally filed." 28 U.S.C. § 1332(d)(4)(B).

6       Plaintiffs' burden "is merely by a preponderance . . [Plaintiffs do not] have to identify

7    anyone as a California citizen, [t]he[y] ha[ve] to demonstrate, by a preponderance, that two-thirds

8    or more of the proposed class are California citizens.  That is, Plaintiff[s] simply ha[ve] to show it

9    [i]s more likely than not." *Romo v. Panda Rest. Group*, No. CV 12-00996 GAF (OPx), 2012 U.S.

10    Dist. LEXIS 128689, at *7 (C.D. Cal. Sept. 7, 2012).  Here, all of the elements for the "local

11    controversy" and "home state" exceptions are readily satisfied.

12       With respect to the "two-thirds" requirement, it is common sense that it is implausible that

13    one-third of California home delivery subscribers for Defendant's newspapers permanently left

14    the state.  To be sure, Plaintiffs have retained demography expert Dr. Jeanne Gobalet who

15    concludes, after analyzing "American Community Survey estimates of state-to-state migration

16    during the period 2010-2014" and investigating "the share of persons living in California in 2010

17    who did and did not move out of that state between 2010 and 2014," that "more than 90 percent

18    of persons living in California in 2010 still lived in that state in 2014."  (Decl. of Jeanne Gobalet

19    in Supp. of Pls.' Mot. to Remand ("Gobalet Decl.") ¶ 9.)   Significantly, based on that

20    information, Dr. Gobalet also concludes that it is "extremely unlikely that at least one third of

21    McClatchy newspapers subscribers who subscribed to papers while California residents no longer

22    reside within California."  (*Id.* ¶ 10.)  *See Romo*, 2012 U.S. Dist. LEXIS 128689, at *9 (the court

23    found that the findings submitted by plaintiff's expert, who reviewed and analyzed data from the

24    American Community Survey regarding interstate migration patterns for purposes of satisfying

25    the local controversy exception, "[w]hen view[ed] . . . in light of what it is intended to prove, . . .

26    is plainly relevant and sufficient.").

27       Indeed, the "two-thirds requirement" is satisfied even under a common sense reading of

28    Plaintiffs' proposed class definition, which is expressly limited to "all persons *in California* who

subscribed" to Defendant's newspaper.  (SAC ¶ 48 (emphasis added).)  The likelihood that one-third of the putative class are no longer California citizens is even more remote when considering the basis for putative class members' claims:  *payments for home delivery subscriptions to local newspapers that serve the Sacramento, Fresno, Modesto, Merced and San Luis Obispo media markets.  See*, *e.g.*, *Romo*, 2012 U.S. Dist. LEXIS 128689, at *10 (analyzing the home state exception based on a "common sense judgment[ ] as to the citizenship of purported class members"); *see also Quesada v. Herb Thyme Farms, Inc.*, No. CV 11-00016 ODW(SSx), 2011 U.S. Dist. LEXIS 37697, at *9-10 (C.D. Cal. Mar. 28, 2011) (the local controversy exception was established where plaintiff defined "the class as '[a]ll persons within the state of California who purchased HerbThyme fresh herbs . . . .'  Such definition indicates that Plaintiffs' proposed class is limited to purchasers within California.  A court in this circuit has specifically found that if a complaint asserts 'claims only on behalf of California purchasers,' then 'greater than two-thirds of the members' are citizens of California.") (quoting *Rotenberg v. Brain Research Labs LLC*, No. C-09-2914 SC, 2009 U.S. Dist. LEXIS 91335, at *8-9 (N.D. Cal. Sept. 15, 2009).  For these reasons, the "two thirds requirement" under the local controversy and home state exceptions are satisfied.

With respect to the other requirements under the local controversy exception, McClatchy Newspapers, Inc.—the only defendant currently in the case[3]—is the defendant from whom the putative class seeks significant relief and whose conduct forms the basis of putative class members' claims.  Indeed, Plaintiffs and class members allege that McClatchy Newspapers, Inc. engaged in unlawful marketing and advertising practices by, in part, selling home delivery subscriptions that were subject to inadequately disclosed automatic renewal and continuous service programs.  Plaintiffs and class members also allege that McClatchy Newspapers, Inc. misrepresents its newspaper subscription periods by failing to inform purchasers that renewed subscriptions will be backdated to a prior expiration date rather than starting on the renewed subscription date and shortening subscription periods to account for hidden charges related to

---

[3] The McClatchy Company was voluntarily dismissed as a defendant and the other defendants in the case consist of Does 1-50 and are not currently named.  (SAC ¶ 18.)

1  "special edition" newspapers.  (*See*, *e.g.*, SAC ¶¶ 1-5.)  Also, the principle injuries resulting from

2  the alleged conduct were incurred in California:  1) the proposed class is limited to subscribers in

3  California; 2) the core allegations and claims at issue in this case arise out of and are limited to

4  California; and 3) the home delivery newspapers that Plaintiffs and putative class members

5  subscribed to cater to local California markets such as Sacramento, Fresno, Modesto, Merced and

6  San Luis Obispo.  There have been no other class actions based on these allegations within the

7  past three years and, with respect to both the local controversy and home state exceptions, the

8  Defendant is a citizen of the state in which the action was originally filed, California.

9       For these reasons, requirements for the local controversy and home state exceptions[4] are

10  satisfied, and this case must be remanded.[5]

11       **B.     The Amount in Controversy Requirement Is Not Satisfied**

12       Defendant has also failed to demonstrate that this case satisfies CAFA's $5,000,000

13  jurisdictional threshold.   "A defendant seeking removal of a putative class action must

14  demonstrate, by a preponderance of evidence, that the aggregate amount in controversy exceeds

15  the jurisdictional minimum.  This standard conforms with a defendant's burden of proof when the

16  plaintiff does not plead a specific amount in controversy."  *Rodriguez v. AT & T Mobility Servs.*

17  *LLC*, 728 F.3d 975, 981 (9th Cir. 2013); *see also Rea v. Michaels Stores Inc.*, 742 F.3d 1234,

18  1239 (9th Cir. 2014) ("the preponderance of the evidence standard applies [in CAFA cases]").

19  Furthermore, the court "cannot base a finding of jurisdiction on a defendant's speculation and

20  conjecture; '[r]ather, a defendant must set forth the underlying facts supporting its assertion that

21  the amount in controversy exceeds the statutory minimum.'"  *Deaver v. BBVA Compass*

22  *Consulting & Benefits, Inc.*, No. 13-CV-00222 JSC, 2014 U.S. Dist. LEXIS 72074, at *10 (N.D.

23

24  [4] The Court also has discretion t remand "in the interests of justice and looking at the totality of the circumstances" under 28 U.S.C. § 1332(d)(3).

25

26  [5]  In the event Plaintiffs' motion is denied based on the allegations contained in the SAC, Plaintiffs request jurisdictional discovery or leave to amend the SAC "to clarify issues pertaining to federal jurisdiction under CAFA . . . ."  *Benko v. Quality Loan Serv. Corp.*, 789 F.3d 1111, 1117 (9th Cir. 2015); *see also id.*

27  (By amending their complaint in these circumstances, plaintiffs can provide a federal court with the information required to determine whether a suit is within the court's jurisdiction under CAFA."); *Gibson v. Chrysler Corp.,* 261 F.3d 927, 948 (9th Cir. 2001).

28

1  Cal. May 27, 2014).

2   Without any calculations, data or evidence, Defendant baldly estimates that "the charges

3  for special editions exceeded approximately $8,000,000 between 2011 and the date or [*sic*]

4  removal." (Notice of Removal 8.)  Defendant supports this generalized amount by simply stating

5  that this is what its "business records show."  (*Id.*)  Such a speculative, ballpark guess – coupled

6  with other blanket references to restitution or damages and attorneys' fees (*id.* 8-9) – is

7  insufficient to satisfy the controversy requirement for removal under CAFA.  *See*, *e.g.*, *Dittmar v.*

8  *Costco Wholesale Corp.*, No. 14-CV-1156-LAB-JLB, 2014 U.S. Dist. LEXIS 156666, at *12-13

9  (S.D. Cal. Nov. 5, 2014) ("Courts have consistently held that assumptions without any supporting

10  evidentiary weight are speculative and cannot be used to show the amount in controversy.")

11  (string citation omitted).

12   Defendant has not demonstrated that the amount in controversy requirement has been met.

13   **C.**   **Defendant Has Waived Its Right to Removal and Removal Is Untimely**

14   If, as Defendant contends, the SAC "greatly expanded the scope of the putative class, as

15  well as the substantive claims at issue in this case" (Notice of Removal 1), and it had notice that

16  CAFA was implicated based on these additional allegations, Defendant has waived its right to

17  removal and removal is untimely.

18   Plaintiffs filed their SAC on July 30, 2015.  (Talley Decl. ¶ 2.)  Under CAFA, Defendant

19  had thirty days to remove after receiving the SAC.  28 U.S.C. § 1446(b)(3).  It did not file its

20  Notice of Removal until September 8, 2015.  (Dkt. No. 1.)

21   In addition, a defendant waives its right to remove a case to federal court where, after it is

22  apparent that the case is removable, the defendant takes actions in state court that manifest its

23  intent to have the matter adjudicated there, and to abandon his or her right to a federal forum.

24  *Resolution Trust Corp. v. Bayside Developers*, 43 F.3d 1230, 1240 (9th Cir. 1994).  Courts have

25  held that obtaining a ruling on a demurrer in state court manifests an intent to proceed in that

26  forum.  *Ettlin v. Harris*, No. SACV 13-1515-DOC (JPRx), 2013 U.S. Dist. LEXIS 170526, at

27  *15-16 (C.D. Cal. Nov. 22, 2013).  The reason for this is that a defendant may not "experiment"

28  in state court and remove upon receiving an adverse decision.  *Moore*, 981 F.2d at 447-48.  "This

-12-

is not an erroneous view of the law; it has been applied in various permutations by different courts." *Id.* (citing *McKinnon v. Doctor's Assoc., Inc.*, 769 F. Supp. 216, 217 (E.D. Mich. 1991) (affirmative use of the state court processes, such as motion to compel arbitration, waives right to remove); *Bolivar Sand Co. v. Allied Equip., Inc.*, 631 F. Supp. 171 (W.D. Tenn. 1986) (defendant intended to seek disposition of state court action on the merits); *Chicago Title & Trust Co. v. Whitney Stores, Inc.*, 583 F. Supp. 575, 576-77 (N.D. Ill. 1984) ("party's waiver of its right to remove generally depends on its intent to do so" unless the party's actions in state court "are deemed to constitute a submission to its jurisdiction"; motion to continue trial date was inconsistent with intent to seek federal jurisdiction); *Kiddie Rides U.S.A. v. Elektro-Mobiltechnik GMGH*, 579 F. Supp. 1476, 1479-1480 (C.D. Ill. 1984) (motion to vacate order of attachment constituted "clear and unequivocal waiver" of right to remove; a defendant "may not, after having argued and lost an issue in state court, remove the action for what is in effect an appeal of the adverse decision").

Here, the alleged grounds for Defendant's removal were apparent more than a year ago when this case was originally filed. Despite this, the Defendant elected to proceed in the Superior Court. It filed a demurrer seeking a legal determination as to whether the Plaintiff had standing to bring this action. Defendant lost and is now seeking removal so that it can apparently raise this issue again. Also, for almost a year, the Defendant engaged in pre-trial discovery. (Talley Decl. ¶ 3.) Such conduct clearly constitutes an "intent to proceed in state court." As such, Defendant has waived its right to removal.

**D.     Plaintiffs Request For Reimbursement of Costs**

28 U.S.C. § 1447(c) states that "an order remanding [a] case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." *Id.*

> The Ninth Circuit has held that district court are granted '*wide discretion*' under section 1447(c) to decide whether to award attorneys' fees and costs along with an order to remand. The Ninth Circuit has further held that *a district court need not find 'bad faith'* as a prerequisite to an award of attorneys' fees incurred to pursue a remand to state court. The Ninth Circuit quoted with approval the district court's statement that '[t]he court's award of fees in this case is not a punitive award

against defendants; it is simply reimbursement to plaintiffs of *wholly unnecessary* litigation costs the defendant inflicted.'

*Walker v. Motricity Inc.*, 627 F. Supp. 2d 1137, 1144 (N.D. Cal. 2009) (emphasis added) (quoting *Moore*, 981 F.2d at 447).

Here, Defendant had no objectively reasonable basis for removal.  The express allegations and claims contained in Plaintiffs' FAC and SAC, and the overall nature of this case, clearly establish that this is a localized, intrastate dispute.  On its face, Plaintiffs have plead claims involving violations of California statutes and a class definition expressly limited to persons "*in California.*"  Defendant has submitted a declaration from an individual who is no longer in the putative class.  Furthermore, this case is about home delivery subscriptions to local newspapers for Sacramento, Fresno, Merced, Modesto, and San Luis Obispo.  The only defendant currently in the case is a California citizen.

Furthermore, Plaintiffs' demography expert has provided an opinion that within the past four years nowhere close to one-third of California's population has permanently moved from the state.  (Gobalet Decl. ¶ 9; *see also* Talley Decl. ¶ 7.)  Based on those findings, she found it "extremely unlikely that at least one third of McClatchy newspapers subscribers who subscribed to papers while California residents no longer reside within California."  (Gobalet Decl. ¶ 10.) Defendant, with access to all of its subscriber data, undoubtedly knows this to be true.  This case is plainly limited to California and, as described above, the local controversy and home state exceptions to CAFA are readily satisfied.

Defendant's removal is fundamentally nothing more than gamesmanship and forum shopping.  Defendant has fully availed itself of state court over the year that this case has been pending.  It filed a demurrer and motion to strike in response to plaintiff's initial complaint, which was fully briefed and considered by the court.  Defendant's demurrer was granted in part and denied in part and the portions of the complaint that Defendant moved to strike were either dropped as moot or denied.  Defendant also filed a demurrer to plaintiff's FAC.  In addition, both parties served and responded to discovery and have engaged in meet and confer efforts in an effort to resolve outstanding discovery disputes.  The parties were in the process of scheduling

-14-

depositions when the case was removed.  (Talley Decl. ¶¶ 2-3.)

Plaintiffs' counsel contacted counsel for Defendant to advise him that removal was improper under CAFA because Plaintiffs were seeking to certify a class that consisted only of California citizens involving claims against a defendant that was also a citizen of California. (Talley Decl. ¶ 4.)   Plaintiffs' counsel also advised Defendant's counsel that even if he misapprehended the proposed class definition, exceptions to CAFA would apply and it was implausible that more than one-third of the putative class were citizens of another state.  It was particularly unlikely given the allegations and claims at issue in this case.  (*Id*. ¶ 4.)  Furthermore, Plaintiffs' counsel informed Defendant's counsel that they would apply for sanctions if they were forced to file a motion to remand and retain an expert and asked him to explain how removal was proper or why he thought remand would be unsuccessful.  (*Id*. ¶¶ 4-6.)  Counsel for the Defendant merely stated that he disagreed with the conclusions reached by Plaintiffs' counsel and found their analysis to be flawed.  (*Id*. ¶¶ 5-6 and Ex. B.)

This case should never have been removed, and Plaintiffs should never have had to expend time and resources to prepare and file a remand motion, much less expend any additional time and resources to engage in further briefing, oral argument or appellate practice related to Defendant's unnecessary and unreasonable removal.   Accordingly, Plaintiffs request reimbursement for their expert costs in the approximate amount of $4,000.[6]  (Talley Decl. ¶ 8.)

## VI.   **CONCLUSION**

For the reasons described above, Plaintiffs' motion to remand should be granted and Plaintiffs should be reimbursed for the expert costs associated with preparing their motion.

Dated: October 8, 2015.                     KERSHAW, CUTTER & RATINOFF LLP


By: */s/ Stuart C. Talley*
     Stuart C. Talley

*Counsel for Plaintiffs and the Class*

---

[6]   Plaintiffs' counsel has not yet received the final invoice for expert fees.  In the event the Court is inclined to award costs, Plaintiffs' counsel can provide an exact amount at the hearing on this motion. (Talley Decl. ¶ 8.)

-15-