1   GREENBERG TRAURIG, LLP
    KURT A. KAPPES (SBN 146384)
2   1201 K Street, Ste. 1100
    Sacramento, CA  98514
3   Tel:    916-442-1111
    Fax:    916-448-1709
4   Email: kappesk@gtlaw.com

5
    ROBERT J. HERRINGTON (SBN 234417)
6   BENJAMIN S. KURTZ (SBN 280515)
    1840 Century Park East, 19th Floor
7   Los Angeles, CA 90067
    Telephone:    (310) 586-7700
8   Facsimile:    (310) 586-7800
    Email: herringtonr@gtlaw.com; kurtzb@gtlaw.com
9

10  Attorneys for Defendant
    McCLATCHY NEWSPAPERS, INC.
11

12                  UNITED STATES DISTRICT COURT

13                  EASTERN DISTRICT OF CALIFORNIA

14

15  JOSEPH CORTEZ, BRAD ASBURY,          CASE NO. 2:15-cv-01891-TLN-EFB
    MARGARET FELTS, and BELEN DURFEE,
16  individually and on behalf of all others   **OPPOSITION TO PLAINTIFFS' MOTION
    similarly situated,                  TO REMAND AND REQUEST FOR
17                                        EXPENSES**

18             Plaintiffs,               [Filed concurrently with Declarations of Dale
                                         March, Maria Ravera, Robert Herrington, R.
19  v.                                   Elaine Lintecum, Marshall McDowell, and
                                         Request for Judicial Notice]
20  McCLATCHY NEWSPAPERS, INC.; and
    DOES 1 through 50, inclusive,        Date:       November 5, 2015
21                                        Time:       2:00 p.m.
               Defendants.               Courtroom:  2
22                                        Judge:      Hon. Troy L. Nunley

23
                                         Complaint Filed:       October 2, 2014
24                                        Second Amended Complaint Filed:  July 30, 2015
                                         Action Removed:        September 8, 2015
25

26

27

28

SAC 442658097v8

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ................................................................... 1

II.    BACKGROUND ..................................................................................... 3

    A.    Procedural History, and the Second Amended Complaint's Expansion of this Case................................................................................................ 3

    B.    The Substantially Similar Class Actions Filed in 2013. ...................... 4

III.    NO ANTI-REMOVAL PRESUMPTION ATTENDS CASES INVOKING CAFA. ................... 6

IV.    MCCLATCHY HAS ESTABLISHED CAFA SUBJECT MATTER JURISDICTION. .............. 6

    A.    CAFA's Minimum Diversity Requirement is Satisfied............................ 6

    B.    The Amount-in-Controversy is Satisfied. ........................................... 9

V.    PLAINTIFFS FAILED TO SATISFY THEIR BURDEN OF PROVING THAT CAFA'S "HOME STATE" AND "LOCAL CONTROVERSY" EXCEPTIONS APPLY........................ 10

    A.    Plaintiffs Failed to Prove that the Required Number of Putative Class Members Were California Citizens.......................................................................... 12

    B.    Class Actions Involving Substantially Similar Allegations Were Filed In Missouri Less than Three Years Ago.......................................................................... 15

VI.    REMOVAL WAS TIMELY, AND MCCLATCHY DID NOT "WAIVE" ITS RIGHT TO REMOVE THIS ACTION. ........................................................................ 17

VII.    PLAINTIFFS' REQUEST FOR EXPENSES IS INAPPROPRIATE....................................... 19

VIII.    CONCLUSION........................................................................................ 19

SAC 442658097v8

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Bolivar Sand Co., Inc. v. Allied Equip., Inc.*,
   631 F. Supp. 171 (W.D. Tenn. 1986)................................................................18

*Chicago Title & Trust Co. v. Whitney Stores, Inc.*,
   583 F. Supp. 575 (N.D. Ill. 1984)...................................................................18

*Cotter v. Lyft, Inc.*,
   60 F. Supp. 3d 1059 (N.D. Cal. 2014) ...............................................................7

*Cutrone v. Mortgage Elec. Registration Sys., Inc.*,
   749 F.3d 137(2d Cir. 2014)...........................................................................17

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
   135 S. Ct. 547 (2014)......................................................................1, 6, 9, 11

*Dennison v. Carolina Payday Loans, Inc.*,
   549 F.3d 941 (4th Cir. 2008) ...........................................................................9

*Emrich v. Touche Ross & Co.*,
   846 F.2d 1190 (9th Cir. 1988) .........................................................................6

*Ettlin v. Harris*,
   NO. SACV 13-1515-DOC, 2013 WL 6178986 (C.D. Cal. Nov. 22, 2013) ......................18

*Fontenberry v. MV Transp., Inc.*,
   984 F. Supp. 2d 1062 (E.D. Cal. 2013)...............................................................7

*Gaus v. Miles*,
   980 F.2d 564 (9th Cir. 1992) ...........................................................................6

*Giannini v. Northwestern Mut. Life Ins. Co.*,
   No. C 12-77 CW, 2012 WL 1535196 (N.D. Cal. Apr. 30, 2012)..............................15, 16

*Guglielmino v. McKee Foods Corp.*,
   506 F.3d 696 (9th Cir. 2007) .........................................................................11

*Harris v. Bankers Life and Cas. Co.*,
   425 F.3d 689 (9th Cir. 2005) ...........................................................................8

*Irving v. Okonite Co., Inc*,
   No. 2:15-CV-04821-ODW-SS, 2015 WL 4762457 (C.D. Cal. Aug. 12, 2015)..................19

*Johnson v. Advance Am.*,
   549 F.3d 932 (4th Cir. 2008) ...........................................................................9

OPPOSITION TO MOTION TO REMAND

*Jordan v. Nationstar Mortgage LLC*,
    781 F.3d 1178 (9th Cir. 2015) ............................................................................. 18

*Kanter v. Warner-Lambert Co.*,
    265 F. 3d 853 (9th Cir. 2001) ......................................................................... 6, 13

*Kiddie Rides USA, Inc. v. Elektro-Mobiltechnik*
    GMBH, 579 F. Supp. 1476 (C.D. Ill. 1984) ....................................................... 18

*Lancaster v. Daymar Colleges Group, LLC*,
    No. 3:11-CV-157-R, 2012 WL 884898 (W.D. Ky. March 14, 2012) ............................. 13

*Leon v. Gordon Trucking, Inc.*,
    76 F. Supp. 3d 1055 (C.D. Cal. 2014) ............................................................... 19

*Levine v. Entrust Grp., Inc.*,
    No. C 12-03959 WHA, 2013 WL 1120695 (N.D. Cal. Mar. 18, 2013) ....................... 15

*Libhart v. Santa Monica Dairy Co.*,
    592 F. 2d 1062 (9th Cir. 1979) ............................................................................. 6

*Mas v. Perry*,
    489 F.2d 1396 (5th Cir. 1974) ............................................................................. 13

*Mattel, Inc. v. Bryant*,
    441 F. Supp. 2d 1081 (C.D. Cal. 2005) *aff'd*, 446 F.3d 1011 (9th Cir. 2006) ................ 18

*McMorris v. TJX Companies, Inc.*
    493 F. Supp. 2d 158 (D. Mass. 2007) ................................................................... 8

*Moore v. Permanente Med. Grp., Inc.*,
    981 F.2d 443 (9th Cir. 1992) ............................................................................. 18

*O'Shaughnessy v. Cypress Media, L.L.C.*,
    No. 4:13-cv-0947-DGK, 2015 WL 4197789 (W.D. Mo. July 13, 2015) ....................... 5

*Opelousas Gen. Hosp. Auth. v. Fairplay Solutions, Inc.*
    655 F.3d 358 (5th Cir. 2011) ............................................................................. 11

*Ortiz v. Menu Foods, Inc.*,
    525 F. Supp. 2d 1220 (D. Haw. 2007) ................................................................. 19

*Phillips v. Severn Trent Envtl. Serv., Inc.*,
    Civ. No. 07-3889, 2007 WL 2757131 (E.D. La. Sept. 19, 2007) ............................... 15

*Preston v. Tenet Healthsystem Memorial Medial Ctr., Inc.*
    485 F.3d 793 (5th Cir. 2007) ................................................................. 8, 12, 13

*Quesada v. Herb Thyme Farms, Inc.*,
    No. CV 11-00016 ODW SSX, 2011 WL 1195952 (C.D. Cal. Mar. 28, 2011) ............... 13

iii    OPPOSITION TO MOTION TO REMAND

1

*R.R. St. & Co. Inc. v. Transp. Ins. Co.*,
    656 F.3d 966 (9th Cir. 2011) ..................................................................... 17

2

*Rea v. Michaels Stores Inc.*,
    742 F.3d 1234 (9th Cir. 2014) ........................................................ 2, 17, 18

3

4

*Reece v. AES Corp.*,
    NO. CIV-12-0457-JH, 2013 WL 1342379 (E.D. Okla. Apr. 2, 2013) ......... 12

5

*Resolution Trust Corp. v. Bayside Developers*,
    43 F.3d 1230 (9th Cir. 1994) ..................................................................... 18

6

7

*Roa v. TS Staffing Servs., Inc.*
    No. 2:14-cv-8424-ODW, 2015 WL 300413 (C.D. Cal. Jan. 22, 2015) ......... 9

8

9

*Romo v. Panda Rest. Grp., Inc.*,
    No. CV 12-00996 GAF OPX, 2012 WL 3930346 (C.D. Cal. Sept. 7, 2012)... 13

10

*Roth v. CHA Hollywood*,
    Case No. 2:12-cv-07559-ODW-SHx (Dkt.48) (C.D. Cal. Sept. 5, 2013) ..... 13, 14

11

12

*Roth v. CHA Hollywood Med. Ctr., L.P.*,
    720 F.3d 1121 (9th Cir. 2013) .................................................. 2, 6, 17, 18

13

14

*Serrano v. 180 Connect, Inc.*,
    478 F.3d 1018 (9th Cir. 2007) ................................................................ 6, 11

15

*In re Sprint Nextel Corp.*,
    593 F.3d 669 (7th Cir. 2010) ........................................................... 9, 12, 15

16

17

*Takeda v. Northwestern Nat'l Life Ins. Co.*,
    765 F.2d 815 (9th Cir. 1985) ....................................................................... 6

18

19

*Tanoh v. Dow Chem. Co.*,
    561 F.3d 945 (9th Cir. 2009) ....................................................................... 6

20

21

*In re Textainer P'ship Sec. Litig.*,
    NO. C 05-0969 MMC, 2005 WL 1791559 (N.D. Cal. July 27, 2005) ........... 6

22

*Torres v. CleanNet, U.S.A., Inc.*,
    No. CIV. NO. 14-2818, 2014 WL 5591037 (E.D. Pa. Nov. 4, 2014).......... 16

23

24

*Unutoa v. Interstate Hotels and Resorts, Inc.*,
    No. 2:14-cv-09809-SVW-PJ, 2015 WL 898512 (C.D. Cal. Mar. 3, 2015) ......... 9

25

*Varsam v. Laboratory Corp. of America*,
    No. 14cv2719 BTM (JMA), 2015 WL 4199287 (S.D. Cal. July 13, 2015) ......... 8

26

27

*Vasquez v. Blue Cross of California*,
    No. CV-15-2055-MWF AGRx, 2015 WL 2084592 (C.D. Cal. May 5, 2015).......... 8

28

*Visendi v. Bank of Am., N.A.*,
  733 F.3d 863 (9th Cir. 2013) ...................................................................................................... 11

**State Cases**

*Norwest Mortgage, Inc. v. Superior Court*,
  72 Cal. App. 4th 214 (1999) ....................................................................................................... 7

**Federal Statutes**

28 U.S.C. § 1332(d)(2)(A) .................................................................................................... 6, 7, 9

28 U.S.C. § 1332(d)(4) ............................................................................................................... 12

28 U.S.C. § 1332(d)(4)(A)(ii) .................................................................................................... 15

28 U.S.C. § 1446(b)(1) ............................................................................................................... 17

28 U.S.C. § 1446(b)(3) ............................................................................................................... 17

28 U.S.C. § 1447(c) .................................................................................................................... 18

**State Statutes**

California Business & Professions Code § 17208 ....................................................................... 10

**Rules**

Federal Rules of Civil Procedure, Rule 23(a) .............................................................................. 5

**Other Authorities**

S. Rep. 109–14, at 40, 2005 U.S.C.C.A.N. 3 ............................................................................. 15

SAC 442658097v8

# I.    **PRELIMINARY STATEMENT**

The jurisdictional requirements of the Class Action Fairness Act ("CAFA") are satisfied here, and the Court should deny Plaintiffs' Motion to Remand.  CAFA's minimum diversity requirement is satisfied because McClatchy Newspapers, Inc. ("McClatchy") has submitted declarations establishing that the citizenship of at least one putative class member was diverse from its own at the time of removal.  CAFA's amount-in-controversy requirement also is satisfied because the declarations and evidence submitted with this Opposition establish that more than $5 million is at issue in Plaintiffs' operative complaint.  Therefore, and as explained more fully below, McClatchy has carried its burden to establish CAFA jurisdiction.[1]

Plaintiffs nevertheless contend that this action should be remanded.  They make four primary arguments, each of which fails.

First, Plaintiffs argue that the minimal diversity requirement is not satisfied because their proposed class supposedly is limited to California "residents," and does not include people who subscribed in California but currently are not in the state.  This argument fails because Plaintiffs are attempting to redefine their proposed class after removal, which is improper.  Plaintiffs' proposed class definition says nothing about "residence" or someone leaving the state, requiring only that a person have been "in California" and "subscribed" to one of McClatchy's newspapers.  Plaintiffs' argument also is wrong as a matter of law.  Residence and citizenship are not the same, and nothing in their proposed class definition (or their attempted redefinition) excludes citizens of other states.  In any event, Plaintiffs' argument is moot, because McClatchy is submitting evidence from an individual who would be part of Plaintiffs' redefined class and is a citizen of Arizona, thus confirming minimal diversity.

Second, Plaintiffs argue that CAFA's amount-in-controversy requirement is not satisfied.  Yet, Plaintiffs ignore the allegations in McClatchy's notice of removal, which establish that more than $5 million is at issue, and Plaintiffs offer no evidence of their own.  Furthermore, as permitted by the Supreme Court's recent decision in *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547 (2014), McClatchy is submitting declarations confirming that the amount-in-controversy is satisfied.

---

[1] Plaintiffs' remand motion does not dispute that CAFA's numerosity requirement is satisfied.

1    Third, Plaintiffs argue that the "home state" and "local controversy" exceptions apply.  Plaintiffs

2    have the burden to prove these exceptions, and they have not met their burden.  These exceptions

3    require proof that two-thirds or one third, respectively, of the putative class members are *citizens* of the

4    State of California.  But Plaintiffs offer no proof of citizenship whatsoever.  The only ostensible

5    "evidence" they submit is the declaration of a demographer, Jeanne Gobalet.  But as explained below,

6    Ms. Gobalet's testimony is not in any way probative of the citizenship of the putative class.  The only

7    thing Ms. Gobalet is competent to testify to is general migration patterns between states, which does not

8    establish citizenship.

9         The "local controversy" exception also requires proof that "no similar class actions" involving

10   "similar factual allegations" were filed in the past three years.  Plaintiffs cannot make this showing

11   either.  In 2013, consumers filed putative class actions in Missouri that are strikingly similar to the one

12   brought by Plaintiffs here.  As explained below, the Missouri actions: (i) challenged subscription and

13   renewal practices like those at issue here; (ii) were directed at the same California newspapers at issue

14   here; and (iii) named, as a defendant, the same corporate entity originally named in this action.  CAFA

15   was intended to federalize these types of repetitive cases.  The narrow local controversy exception does

16   not apply here.

17        Fourth, Plaintiffs argue that McClatchy's removal was "untimely."  But in making this argument,

18   Plaintiffs ignore controlling Ninth Circuit precedent.  *See Roth v. CHA Hollywood Med. Ctr., L.P.*, 720

19   F.3d 1121, 1125-26 (9th Cir. 2013); *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1238 (9th Cir. 2014).

20   Under these cases, McClatchy's removal was timely because no 30-day removal period was triggered.

21   None of the pleadings or other papers served in this action plainly disclosed the elements necessary to

22   establish federal jurisdiction, so McClatchy was free to gather the evidence establishing CAFA's

23   requirements and then remove.  Plaintiffs' assertion that McClatchy "waived" its right to removal is

24   baseless.  As explained below, McClatchy's basis for removal did not exist until Plaintiffs filed their

25   Second Amended Complaint.  McClatchy could not have knowingly and unequivocally waived a right

26   that did not exist until just recently.

27        For these reasons, and as explained more below, McClatchy properly removed this action to

28   federal court.  Plaintiffs' remand motion, and their request for expenses, should be denied.

## II.   BACKGROUND

### A.   Procedural History, and the Second Amended Complaint's Expansion of this Case.

On October 2, 2014, Plaintiff Joseph Cortez filed his original class action complaint (the "Original Complaint") in state court against (a) McClatchy, and (b) McClatchy's parent company, The McClatchy Company. (Lintecum Decl. ¶ 2.) Plaintiff Cortez alleged that McClatchy and The McClatchy Company billed him for newspapers that were delivered without his consent. (Dkt. 1-1 (Removal Exhibit A) Original Complaint, ¶¶ 16-27.) Plaintiff Cortez also alleged that McClatchy and The McClatchy Company (i) failed to disclose their policy of "automatically" renewing consumers' subscriptions; and (ii) "secretly backdated" expiration dates so that the consumer was "short changed" with the length of their subscription periods. (*Id.*)

The Original Complaint sought restitution under the California's Automatic Renewal Law ("ARL"), injunctive relief and restitution under California's Unfair Competition Law ("UCL"), and damages under California's Consumer Legal Remedies Act ("CLRA"). Plaintiff Cortez also sought to assert his claims on behalf of a putative class, defined as:

> All persons in California who purchased a newspaper subscription from Defendants and their affiliates within the last four years, who were invoiced and/or forced to pay additional cost for newspapers sent to them after the expiration of their subscription terms, without their explicit consent for ongoing shipments or ongoing deliveries of service.

(Original Complaint, ¶ 29.)

After the Superior Court partially sustained McClatchy's demurrers to the Original Complaint, Plaintiff Joseph Cortez filed and served a First Amended Complaint.[2] As with the Original Complaint, the chief allegations were that McClatchy (i) continued to deliver and bill consumers for unwanted newspapers after the expiration of their subscription terms; (ii) renewed consumers' subscriptions without adequately disclosing its renewal policy; and (iii) "secretly backdate[d]" expiration dates, thereby shortening the consumer's subscription period. (Dkt. 1-1, (Removal Exhibit B) First Amended

---

[2] Shortly before hearing on the demurrers to the Original Complaint, Plaintiff Joseph Cortez voluntarily dismissed The McClatchy Company from this lawsuit without prejudice. (Dkt 1-1, (Removal Exhibit D, p. 275) Minute Order on Demurrer.)

1    Complaint, ¶¶ 16-30.)  The putative class in the First Amended Complaint, much like the Original

2    Complaint, was limited to persons in California who were "invoiced" or "paid money" for renewed or

3    "continuous" subscriptions.  (First Amended Complaint, ¶ 32.)

4         Months later, on July 30, 2015, Joseph Cortez, together with three newly added plaintiffs—Brad

5    Asbury, Margaret Felts, and Belen Durfee—filed their Second Amended Complaint (the operative

6    complaint in this action).   The Second Amended Complaint greatly expanded the scope of the putative

7    class, as well as the substantive claims at issue in this case.  Specifically, Plaintiffs now allege, for the

8    first time in their pleadings, that McClatchy "falsely conveyed the length of subscription periods" by

9    charging for "special edition premium" newspapers:

10             [McClatchy] has designated 9 days a year where 'special edition' newspapers are
                delivered to subscribers.  It then charges a $1 premium for each of these special editions.
11             Instead of including this extra $9 in the subscription price, [McClatchy] simply reduces
                the consumer's subscription period to recoup the $9 charge….For example, if a consumer
12             signed up for a 52 week subscription at a rate of $1 per week….it would expire 43 weeks
                after it was purchased so that [McClatchy] could recoup the $9 special edition premium
13             charges."

14   (Dkt. 1-1, (Removal Exhibit  C) Second Amended Complaint, ¶ 5.)   The Second Amended Complaint

15   also expanded the definition of the putative class to  "*[a]ll persons in California who subscribed to any*

16   *of [McClatchy's] newspapers* from January 1, 2010 to the date of final judgment."  (Second Amended

17   Complaint, ¶ 48.) (emphasis added).

18   **B.    The Substantially Similar Class Actions Filed in 2013.**

19        Plaintiffs' lawsuit is not the first of its kind.  The McClatchy Company (originally named as a

20   defendant in this lawsuit), and McClatchy's sister company (Cypress Media, L.L.C.),[3] were sued in

21   Missouri in 2013 over similar renewal practices (the "Missouri Actions").[4]  (RJN Ex. A, First Missouri

22   Action Complaint, ¶ 13 (subscriber agreements "expressly set forth the specific 'Begin Date'' of a

23   customer's Subscription Period and expressly states that the customer's flat fee payment to Defendant

---

[3] *See* Lintecum Decl. ¶ 2. (explaining that The McClatchy Company is the parent company of McClatchy and Cypress Media, L.L.C.)

[4] *See O'Shaughnessy v. The McClatchy Company*, Case No. 13-cv-00492 (filed April 16, 2013) ("Missouri Action Complaint," or "First Missouri Action") RJN Ex. A, and  *O'Shaughnessy v. Cypress Media, L.L.C.,* Case No. 4:13-cv-0947 (filed July 26, 2013), RJN Ex. B ("Second Missouri Action").

1   'Pays To'' a specific end date") ¶¶ 17-18 ("Notwithstanding the express terms of the Standard

2   Agreements…whenever Defendant renews a customer's subscription it begins the new Subscription

3   Period prior to the end of the current Subscription Period which results in an overlap in a customer's

4   Subscription Period….customer[s] pay more than once for certain days of Newspaper Services").)

5       Plaintiffs in the First Missouri Action challenged renewal and subscription practices of the very

6   same newspapers at issue in this case, including the Sacramento Bee, Modesto Bee, and Fresno Bee.

7   (*Compare* RJN Ex. A First Missouri Action Complaint ¶ 5 ("Defendant provides subscription

8   newspaper services to customers …throughout the United States, including…California); ¶ 6

9   ("particular newspapers published, sold, and distributed are….The Fresno Bee, Merced Sun-Star, The

10  Modesto Bee; The Sacramento Bee; The Tribune), *with* Second Amended Complaint, ¶ 1 ("Defendant

11  owns numerous newspapers throughout the state of California, including the Sacramento Bee, the

12  Modesto Bee, and the Fresno Bee").)

13      And plaintiffs in the Missouri Actions, much like the Plaintiffs here, sought to assert claims on

14  behalf of a putative class of subscribers in California.  (*Compare* RJN Ex. A, First Missouri Action

15  Complaint ¶ 5 ("Defendant provides subscription newspaper services to customers …throughout the

16  United States, including…California),  ¶ 21 ("The class includes thousands of members residing…[in]

17  California") *with* Second Amended Complaint ¶ 48 (defining class as "[a]ll persons in California who

18  subscribed to any of Defendant's newspapers").)

19      After the Missouri Actions were successfully removed,[5] the plaintiffs there filed a motion for

20  class certification, which ultimately was denied.  *See O'Shaughnessy v. Cypress Media, L.L.C.*, No.

21  4:13-cv-0947-DGK, 2015 WL 4197789 at *4 (W.D. Mo. July 13, 2015) ("Of the four Rule 23(a)

22  factors, no factor besides numerosity is completely satisfied here….[and] the lack of commonality in the

23  claims of any conceivable class here is fatal to Plaintiffs' motion [for class certification].")  Plaintiffs

24  here hope to avoid a similar fate by keeping their case out of a federal forum.  But as shown below,

25  CAFA was intended to reach copycat actions like this one.

[5] The First Missouri Action was voluntarily dismissed post removal while a motion to remand was pending.  (*See* Case No. 13-cv-00492, Dkt 23.)  Thereafter, Plaintiffs filed the Second Missouri Action making essentially the same allegations against Cypress Media, LLC, as the lone defendant.  *See infra*, note. 4.

**III.     NO ANTI-REMOVAL PRESUMPTION ATTENDS CASES INVOKING CAFA.**

Plaintiffs' motion begins by misstating the law.  Contrary to Plaintiffs' assertions, there is no "strong presumption" against removal under CAFA.  (Mot. at 5:10-18.)  Instead, the Supreme Court recently explained that CAFA should be read broadly, with a "strong preference" that covered class actions be heard in federal courts.  *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 545 (2014).[6]  All doubts concerning CAFA removal are resolved in favor of exercising jurisdiction over the case.  *Id.* at 545 (explaining that "no antiremoval presumption attends cases invoking CAFA."); *In re Textainer P'ship Sec. Litig.*, NO. C 05-0969 MMC, 2005 WL 1791559, *3 (N.D. Cal. July 27, 2005) (noting that CAFA's legislative history instructs that its jurisdictional provisions "should be read broadly, with a strong preference that interstate class actions should be heard in a Federal court if removed by any defendant").[7]

**IV.     MCCLATCHY HAS ESTABLISHED CAFA SUBJECT MATTER JURISDICTION.**

**A.     CAFA's Minimum Diversity Requirement is Satisfied.**

CAFA's minimum diversity requirement is satisfied, *inter alia*, when at least one plaintiff or putative class member is a citizen of a state of which a defendant is not a citizen.  28 U.S.C. § 1332(d)(2)(A); *Roth*, 720 F.3d at 1124.  Citizenship is determined by a person's domicile, which requires a combination of physical presence and a subjective intent to remain permanently.  *Kanter v. Warner-Lambert Co.*, 265 F. 3d 853, 857 (9th Cir. 2001).  If McClatchy can establish that one putative class member is of diverse citizenship (i.e, a citizen of a state other than California or Delaware[8]), then it has met its burden under Section 1332(d)(2)(A).  *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1024 (9th Cir. 2007) (explaining that removing parties' burden is solely to establish minimal diversity).

---

[6] *See also Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 952 (9th Cir. 2009) (explaining that Congress passed CAFA to "curb abuses of the class action device which, in view of CAFA's proponents, had often been used to litigate multi-state or even national class actions in state court).

[7] The authorities cited by Plaintiffs in support of the alleged "presumption against removal" are all inapposite because *none involved CAFA removals*.  In fact, all of Plaintiffs' cases on this point pre-date the 2005 enactment of CAFA.  (Mot. at 5 (citing *Gaus v. Miles*, 980 F.2d 564 (9th Cir. 1992), *Takeda v. Northwestern Nat'l Life Ins. Co.*, 765 F.2d 815 (9th Cir. 1985), *Libhart v. Santa Monica Dairy Co.*, 592 F. 2d 1062 (9th Cir. 1979), and *Emrich v. Touche Ross & Co.*, 846 F.2d 1190 (9th Cir. 1988).)

[8] Plaintiffs do not dispute that McClatchy is a citizen of the State of California and the State of Delaware.

Plaintiffs define their class as "[a]ll persons in California who subscribed to" one of McClatchy's newspapers "from January 1, 2010 to the date of final judgment." (Second Amended Complaint, ¶ 48.) Under this definition, there are just three requirements: the person must have (i) "subscribed to" one of McClatchy's newspapers; (ii) "in California," (iii) from January 1, 2010, to the date of judgment.

One person falling within this class definition is Catherine Murphy. Ms. Murphy subscribed to the Sacramento Bee, which is owned by McClatchy, while in California from 2009 to 2011. (Dkt. 1-5, Murphy Declaration, ¶ 2.) In or around June 2011, Ms. Murphy relocated to Florida, where she currently resides and intends to remain indefinitely. (*Id.* ¶¶ 3-4.) She is, therefore, a citizen of the State of Florida. Accordingly, McClatchy has satisfied CAFA's minimal diversity requirement, because "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

In an effort to avoid this Court's jurisdiction, Plaintiffs attempt to re-define and limit their proposed class to current California residents. (Mot. at 6:16 ("The Proposed Class Plead [sic] by Plaintiffs Does Not Include Non-California Residents"), 6:23 ("Plaintiffs' proposed class definition only includes Californians….It is intended to exclude former Californians who subscribed to Defendant's newspapers.").) This effort to rewrite the class definition must be rejected for at least two reasons.

First, Plaintiffs' position makes no sense, and it is inconsistent with the definition in their own operative complaint. The term "resident" appears nowhere in the class definition. And, contrary to Plaintiffs' conclusory assertions, there is no temporal modification in the definition requiring that person be "in" California at any given point in time. Plaintiffs are attempting to add these requirements in their remand motion in a transparent effort to avoid federal jurisdiction.

Second, Plaintiffs' position is inconsistent with California law, and would lead to absurd results. The California consumer protection statutes at issue in this case apply to conduct in California, but not extraterritorially. *See Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214, 222 (1999) (UCL not "designed or intended to regulate claims of non-residents arising from conduct occurring entirely outside of California."); *Fontenberry v. MV Transp., Inc.*, 984 F. Supp. 2d 1062, 1069 (E.D. Cal. 2013) ("presumption against extraterritoriality applies to the UCL in full force."); *see also Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1059, 1061 (N.D. Cal. 2014) (explaining presumption against extraterritorial

1  application of California law, and striking class allegations in wage and hour complaint seeking to assert

2  claims on behalf of persons working outside of California).  Under Plaintiffs' attempted redefinition of

3  the class, someone like Ms. Murphy, who subscribed in California and then moved out of state, would

4  *not* be covered, even though the UCL ostensibly applies to McClatchy's subscription and renewal

5  practices in California.  But someone who subscribed out of state and then later moved to California

6  would be covered, even though that subscriber would have no UCL claim (because the UCL does not

7  apply to conduct occurring outside the state).  Moreover, if Plaintiffs' redefinition were accepted,

8  individualized determinations as to class members' locations would have to be made on a continuous

9  basis, because subscribers would necessarily pass in and out of the class depending on their current

10  location.  This is hardly a workable construction of the proposed class.

11       But even if the Court were to consider Plaintiffs' attempt to redefine the class to include only

12  *current* California *residents*, McClatchy still can establish minimal diversity under CAFA.  A definition

13  that is based on residency does not foreclose the inclusion of foreign *citizens* in the class (like students,

14  temporary workers, and others who often purchase and receive subscriptions in California but retain

15  citizenship in other states).  *See, e.g., Harris v. Bankers Life and Cas. Co.*, 425 F.3d 689, 695-96 (9th

16  Cir. 2005) (complaint alleging a plaintiff's residence did not allege, much less reveal for removal

17  purposes, the citizenship of the plaintiff); *Preston v. Tenet Healthsystem Memorial Medial Ctr., Inc.* 485

18  F.3d 793, 797-98 (5th Cir. 2007) (complaint's allegation of a class consisting of residents of a single

19  state does not establish class members' domicile or citizenship at time of filing).[9]

20       At least one such foreign citizen—Dale March—exists.  Mr. March is a current subscriber to the

21  Sacramento Bee.  (March Decl. ¶ 2.)  For the past 5 years, the Sacramento Bee has been delivered to his

22

---

23  [9] *See also Vasquez v. Blue Cross of California*, No. CV-15-2055-MWF AGRx, 2015 WL 2084592, at *4

24  (C.D. Cal. May 5, 2015) (denying remand where plaintiff brought action "on behalf of only California residents who currently are or formerly were subscribers to health care plans," because class consisted

25  of at least one subscriber who lived permanently in another state); *Varsam v. Laboratory Corp. of America*, No. 14cv2719 BTM (JMA), 2015 WL 4199287, at *5 (S.D. Cal. July 13, 2015) ("A person

26  residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state. Removing parties are merely required to allege (not to prove) diversity") (citations omitted);

27  *McMorris v. TJX Companies, Inc.* 493 F. Supp. 2d 158, 163 (D. Mass. 2007) (finding that putative class composed of residents of Massachusetts did not, by definition, foreclose inclusion of non-citizens as

28  well).

second home in California.  (*Id*.)  Mr. March currently lives in California, but only for a few months out of the year.  (*Id.* ¶ 3.)  He retains his primary residence, and his citizenship, in Arizona.  (*Id.* ¶ 3.) Because Mr. March's citizenship is distinct from that of McClatchy, CAFA's minimal diversity requirement is satisfied.  28 U.S.C. § 1332 (d)(2)(A).[10]

**B.      The Amount-in-Controversy is Satisfied.**

As the Supreme Court recently made clear in *Dart Cherokee*, "a defendant's notice of removal need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee,* 135 S. Ct. at 554.  That "amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Id*.

As allowed by *Dart Cherokee*, McClatchy alleged in its Notice of Removal that more than $5 million dollars was in controversy.   The detailed declarations submitted by McClatchy with this Opposition confirm as much.  *Id.* at 553-554 (explaining that if plaintiff contests amount-in-controversy allegations, both sides are to submit evidence regarding the same).

- **Amounts Implicated by the "Special Edition" Premium Allegations**:  Plaintiffs seek to recover restitution in the amount of the "special edition" premium day charges alleged in the Second Amended Complaint.  (Second Amended Complaint, ¶ 66.)  McClatchy's business records show that it charged California subscribers at least **$8,602,062** for special edition premium newspapers (within the four-year statute of limitations applicable to Plaintiffs' claims).[11]  (Ravera Decl., ¶ 3 ($6,367,128 collectively charged

---

[10] Plaintiffs could have limited their proposed class to citizens of California, but chose not to do so.  *See, e.g., Dennison v. Carolina Payday Loans, Inc*., 549 F.3d 941, 943 (4th Cir. 2008) (holding no minimal diversity because class definition was limited to citizens of South Carolina); *Johnson v. Advance Am*., 549 F.3d 932, 937 (4th Cir. 2008) (same); *In re Sprint Nextel Corp*., 593 F.3d 669, 676 (7th Cir. 2010) (observing that "plaintiffs might have defined their class as all Kansas citizens . . . . By using that definition, the plaintiffs could have guaranteed that the suit would remain in state court.").

[11] Plaintiffs seek restitution of the "special edition premiums" under the UCL.  (Second Amended Complaint, ¶¶ 66-67.)  The statute of limitations for UCL claims is four years.  Cal. Bus. & Prof. Code § 17208.

9        OPPOSITION TO MOTION TO REMAND

for The Sacramento Bee, The Modesto Bee, and The Merced Sun-Star; Mc Dowell Decl. ¶ 3 ($2,234,934 charged for The Fresno Bee).)[12]

- **Amounts Implicated by the Allegedly Unlawful "Automatic Renewals"**: Plaintiffs also seek restitution of amounts that were charged for allegedly unwanted newspapers delivered after the expiration of the subscriber's subscription term.  (Second Amended Complaint, ¶¶ 66-67 (seeking restitution under UCL.).)   These amounts would include charges for newspapers that were delivered after the subscription term, where there was no communication from the subscriber stating that he or she wished to cancel the subscription.  McClatchy's business records reflect charges of this type in the amount of at least **$680,582**.  (Ravera Decl., ¶ 4 ($575,889 collectively charged for The Sacramento Bee, The Modesto Bee, The Merced Sun-Star; McDowell Decl. ¶ 4 ($104,693 charged for The Fresno Bee).)

- **Attorney's Fees:**  Plaintiffs' request for attorneys' fees further enlarges the amount-in-controversy.  (Second Amended Complaint, Prayer for Relief ¶ d (requesting "reasonable attorneys' fees").)  Plaintiffs do not dispute that a claim for attorneys' fees is properly included in a removal calculation.  *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 698 (9th Cir. 2007) (fees properly included).  Nor do Plaintiffs dispute that the Ninth Circuit uses a 25% benchmark for calculating fee awards.

When these calculations are totaled, the amount-in-controversy far exceeds CAFA's $5 million jurisdictional threshold:

| | |
|---|---|
| (A)  Special Edition Premiums | $8,602,062 |
| (B)  Allegedly Unlawful Renewals | $680,582 |
| (C)  Attorneys' Fees (25% of A+B) | $2,320,661 |
| **TOTAL** | $11,603,305 |

* * * *

---

[12] McClatchy owns and operates The Sacramento Bee, The Fresno Bee, The Modesto Bee, and the Merced-Sun Star, among other newspapers.  (Lintecum Decl. ¶ 3.)

Plaintiffs' remand motion does even not argue that the amount-in-controversy falls short of CAFA's $5 million threshold.  Instead, Plaintiffs assert that McClatchy failed to support its amount-in-controversy allegations with "calculations, data, or evidence." (Mot. at 12:2-3.)  But after *Dart Cherokee*, it is not enough for Plaintiffs to claim that McClatchy has not *proven* the amount-in-controversy.  If Plaintiffs challenge McClatchy's amount-in-controversy allegations, they must come forward with their own evidence refuting the same.  *Dart Cherokee*, 135 S. Ct.  at 553-554 ("[i]f the plaintiff contests the defendant's allegation…both sides  submit proof").   Plaintiffs' remand motion contains no evidence whatsoever, and thus McClatchy's allegations and evidence showing the amount in controversy stand unrebutted.  *Id.*; *see also Roa v. TS Staffing Servs., Inc.* No. 2:14-cv-8424-ODW, 2015 WL 300413, at *2 (C.D. Cal. Jan. 22, 2015) (finding removal proper where plaintiff did not contest the veracity of defendant's allegations regarding the amount-in-controversy and submitted no independent evidence for the court to consider, but instead asserted only that the allegations lacked sufficient evidentiary support); *Unutoa v. Interstate Hotels and Resorts, Inc.*, No. 2:14-cv-09809-SVW-PJ, 2015 WL 898512, at *1 (C.D. Cal. Mar. 3, 2015) (holding that removing defendants adequately proved the amount in controversy despite the fact that plaintiff contested defendants' evidentiary support on remand because a removing defendant may "rely on some assumptions to support removal").

## V.        PLAINTIFFS FAILED TO SATISFY THEIR BURDEN OF PROVING THAT CAFA'S "HOME STATE" AND "LOCAL CONTROVERSY" EXCEPTIONS APPLY.

Although a defendant has the initial burden of establishing removal jurisdiction under CAFA, a plaintiff seeking remand bears the burden of establishing that an exception to CAFA jurisdiction applies. *See Serrano,* 478 F.3d 1018, 1024 (9th Cir. 2007) (remanding party bears burden to establish CAFA exception by a preponderance of evidence).   Contrary to Plaintiffs' assertions, CAFA's "home state" and "local controversy" exceptions are not jurisdictional.  Instead, they are prudential limitations, which are to be construed narrowly "with all doubt resolved in favor of exercising jurisdiction."  *Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 869 (9th Cir. 2013) ("local controversy is not jurisdictional," and could be waived); *Opelousas Gen. Hosp. Auth. v. Fairplay Solutions, Inc.* 655 F.3d 358, 360 (5th Cir. 2011) (explaining that CAFA exceptions are to be construed narrowly).  Plaintiffs cannot carry their burden of proving the prerequisites of  these narrow exceptions.

**A.** **Plaintiffs Failed to Prove that the Required Number of Putative Class Members Were California Citizens.**

For the "home state" or "local controversy" exceptions to apply, Plaintiffs must prove, by a preponderance of the evidence, that two-thirds or one-third, respectively, of the putative class are citizens—not merely residents—of the forum state.  28 U.S.C. § 1332 (d)(4); *see also Preston,* 485 F.3d at 797 (local controversy exception must be proven by preponderance of evidence); *In re Sprint Nextel Corp.*, 593 F.3d at 673 (holding plaintiffs "had to establish by a preponderance of the evidence that two-thirds of their proposed class members are Kansas citizens" to establish the home state exception to CAFA jurisdiction).[13]  Plaintiffs offer no competent evidence on this issue.

Plaintiffs first attempt to carry their burden by simple reference to the class definition in their complaint.  Plaintiffs assert that it is "common sense" that "all persons in California who subscribed to a McClatchy newspaper"[14] must be California citizens, because McClatchy's newspapers supposedly serve California markets.  (Motion at 9:27 ("'two-thirds requirement' is satisfied [] under a common sense reading of Plaintiffs' proposed class definition"), 10:1-2 ("The likelihood that one-third of the putative class are no longer California citizens is even more remote when considering the basis for the putative class members' claims:  payments for home delivery subscriptions to local newspapers").)  This assertion, which is based on nothing more than speculation and inference (however sensible Plaintiffs think it may be), is insufficient to carry their burden of establishing the citizenship of the putative class.  Circuit courts around the country have rejected similar arguments, even where (unlike here) the class definitions were expressly tied to permanent residence in the forum state.  *See, e.g., In re Sprint Nextel Corp.*, 593 F.3d at 673-74 (rejecting assertion that class definitions embedding criteria for residency, such as cell phone numbers with a forum state billing address, establishes the citizenship of

---

[13] *See also, Reece v. AES Corp.*, NO. CIV-12-0457-JH, 2013 WL 1342379,  at *6 (E.D. Okla. Apr. 2, 2013) (local controversy not established under CAFA where Plaintiff failed to establish "required citizenship of the class members through admissible evidence.").

[14] Certain passages of Plaintiffs' remand motion suggest that the putative class is limited to McClatchy's "home delivery" newspaper subscribers.  (*E.g.,* Mot. at 9:13.)  The class definition, however, is not so limited, and by its terms would include subscribers with "digital" or electronic subscriptions as well. (Second Amended Complaint, ¶ 48 (defining class as all persons who subscribed to one of McClatchy's newspapers).)

class members: "that's all guesswork [of class member citizenship]. Sensible guesswork, based on a sense of how the world works, but guesswork nonetheless."); *Preston,* 485 F.3d at (holding that putative class members medical records, containing primary billing addresses, were insufficient to establish citizenship; "[plaintiffs] presented no evidence… to demonstrate that these patients not only resided in Orleans Parish at the given addresses but also were domiciled in Louisiana at the time of Hurricane Katrina"); *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974) ("For diversity purposes, citizenship means domicile . . . residence in the State is not sufficient."). These decisions roundly reject attempts to equate residence with "citizenship" for purposes of CAFA.[15]

Next, Plaintiffs attempt to carry their burden with a declaration prepared by a demographer. In just a couple sentences, and with no analysis, Jeanne Gobalet concludes that: (A) "[based on] American Community Survey estimates of state-to-state migration….more than 90 percent of persons living in California in 2010 still livered there in 2014"; and that (B) "[it is] extremely unlikely that at least one third of McClatchy newspaper subscribers who subscribed to papers while California residents no longer reside within California. (Gobalet Decl., ¶¶ 9-10.) Ms. Gobalet's terse declaration falls far short of establishing the citizenship requirement, and must be rejected for several reasons.

---

[15] Again, Plaintiffs' class definition does not even reference "residency." But even if it did, residence does not equal citizenship for purposes of CAFA's local controversy or home state exceptions. *See, e.g., Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state."); *see also Lancaster v. Daymar Colleges Group, LLC*, No. 3:11-CV-157-R, 2012 WL 884898, at *3 (W.D. Ky. March 14, 2012) ("No circuit court has applied a rebuttable presumption equating residency to citizenship for the purposes of a CAFA exception").

The district court cases cited by Plaintiffs are not to the contrary. In *Romo v. Panda Rest. Grp., Inc.*, No. CV 12-00996 GAF OPX, 2012 WL 3930346, at *4 (C.D. Cal. Sept. 7, 2012), the court concluded that the local controversy exception applied, based comprehensive statistical evidence provided by plaintiff's expert. While the *Romo* court did suggest that common sense judgments can be made "as to the citizenship of purported class members," this statement was not central to its holding.   *Quesada v. Herb Thyme Farms, Inc.*, No. CV 11-00016 ODW SSX, 2011 WL 1195952, at *4 (C.D. Cal. Mar. 28, 2011), a 2011 remand order authored by Judge Otis Wright in the Central District, is an inaccurate representation of current law. Just two years later, in 2013, Judge Wright authored *Roth v. CHA Hollywood*, Case No. 2:12-cv-07559-ODW-SHx (Dkt.48) (C.D. Cal. Sept. 5, 2013), where he acknowledged that citizenship cannot be presumed from residence. (RJN Ex. C, p. 5 (acknowledging that "[c]ourts have routinely held that assertions of mere residence do not suffice to establish citizenship.")

First, Ms. Gobalet's conclusions are unfounded and irrelevant.  The only thing Ms. Gobalet is competent to testify to is general state-to-state migration patterns.  Nothing in her declaration ties the migration study she reviewed, on the one hand, to the legal residency or citizenship of McClatchy's subscriber base, on the other hand.  Her testimony is not in any way probative of the citizenship of the putative class.

Second, Ms. Gobalet's conclusion is predicated on an unsupported assumption.  Ms. Gobalet's declaration assumes that all putative class members who subscribed to a McClatchy newspaper in California are necessarily California citizens.  She then uses American Community Service ("ACS") estimates to show that only 10% of these class members would have left the state since the inception of the putative class period.  (Gobalet Decl., ¶¶ 9-10.)  But Plaintiffs and Ms. Gobalet offer nothing to establish that putative class members were California citizens to begin with. She simply assumes they were.  This is not an appropriate assumption for Ms. Gobalet to make (particularly given that McClatchy identified several class members who are citizens of foreign states—*see infa*, Section IV).   (RJN, Ex. C *Roth v. CHA Hollywood*, Case No. 2:12-cv-07559-ODW-SHx (C.D. Cal. Sept. 5, 2013) (Dkt. 48) (denying remand, and rejecting expert declaration of plaintiffs' demographer, because expert improperly assumed that "having a California address [] automatically render[ed] one a California citizen.").)

Third, Ms. Gobalet's conclusion is speculative and unreliable.  Ms. Gobalet reviewed the ACS survey—a document she did not prepare or attach to her declaration—and concluded, without any explication of her analysis or methodology, that it is "unlikely" that "at least one third" of McClatchy subscribers are no longer "residents" of California.  Ms. Gobalet's opinion is replete with hedge words, and tellingly, her ultimate conclusion is phrased in the negative.  (Gobalet Decl., ¶10 ("I find it extremely unlikely that at least one third…").)  Ms. Gobalet never affirmatively states that two-thirds (or even one third) of McClatchy subscribers are, in all likelihood, California residents—much less *citizens*, which, again, is the governing inquiry.

Fourth, Ms. Gobalet's opinion assumes that the migration patterns of the putative class are identical to those of the other residents surveyed by the ACS.  But research surveys suggest that newspaper subscribers tend to be older than the general population.  *See* Pew Research Center, Newspaper Daily Readership By Age, *available at* http://www.journalism.org/media-

1  indicators/newspaper-readership-by-age/ (last visited October 14, 2015).  Ms. Gobalet offers no

2  explanation as to why migration patterns should be the same for this demographically distinct group.

3  In the end, Plaintiffs' only "evidence" on the citizenship requirement is speculation and

4  inference.  But speculation, inference, or "guesswork"—even "sensible guesswork"—is insufficient for

5  Plaintiffs to carry their burden.   *See Sprint*, 593 F.3d at 674; *see also Phillips v. Severn Trent Envtl.*

6  *Serv., Inc.*, Civ. No. 07-3889, 2007 WL 2757131, at *3 (E.D. La. Sept. 19, 2007) ("Based on the

7  plaintiff's own definition of the class in his petition, it is clear that the class would contain only those

8  people who were residing in or occupying a premise in Louisiana in May 2007.  However, that alone

9  does not establish that the class members are Louisiana citizens, because "citizenship" in a state requires

10 more than residence.").  Remand must be denied.[16]

11 **B.     Class Actions Involving Substantially Similar Allegations Were Filed In Missouri Less than**

12 **Three Years Ago.**

13 The local controversy exception does not apply if "during the 3-year period preceding the filing

14 of that class action, [another] class action has been filed asserting the same or similar factual allegations

15 against any of the defendants on behalf of the same or other persons."  28  U.S.C. § 1332(d)(4)(A)(ii).

16 "The purpose of the local-controversy exception is to leave to state courts those non-repetitive

17 controversies that are isolated within a single state."  *Levine v. Entrust Grp., Inc.*, No. C 12-03959

18 WHA, 2013 WL 1120695, at *4-5 (N.D. Cal. Mar. 18, 2013).  "If a controversy results in the filing of

19 multiple [similar] class actions," it is a "strong signal" that they are not local in nature, but instead,

20 implicate issues of national concern that should be addressed in a federal forum.  S. Rep. 109–14, at 40,

21 2005 U.S.C.C.A.N. 3 at 39; *see also Levine*, 2013 WL 1120695, at *4-5 (denying motion to remand on

22 basis of local controversy, where "almost identical" putative class actions were filed in Central District

23 of California); *Giannini v. Northwestern Mut. Life Ins. Co.*, No. C 12-77 CW, 2012 WL 1535196, at *5

24 (N.D. Cal. Apr. 30, 2012) (denying remand on basis of local controversy, because similar putative class

---

[16] In a footnote in their Motion to Remand, Plaintiffs make a passing request for jurisdictional discovery.
(Mot. at 11, n. 5)  But Plaintiffs make no showing that discovery is necessary or appropriate, and they
do not explain what discovery they seek.  Plaintiffs should not be permitted to raise these new
arguments in a reply brief, and they have effectively waived any right to seek jurisdictional discovery.

1  actions had been filed on behalf of national classes).  The "no similar class actions" requirement

2  precludes application of the local controversy exception here.  28 U.S.C. §1332(d)(4)(A)(ii).

3       The factual foundations of the instant case—automatic newspaper renewal practices, and alleged

4  misrepresentations concerning the length of subscription periods—are similar to the claims directed

5  against (a) The McClatchy Company (originally named as a defendant in this lawsuit), and (b) its sister

6  Company, Cypress Media, L.L.C., in the Missouri Actions filed less than three years ago.  (RJN Ex. A,

7  Missouri Action Complaint. ¶ 17 ("whenever Defendant renews a customer's subscription it begins the

8  new Subscription Period prior to the end of the current Subscription Period"), ¶ 18 ("a customer  pays

9  more than once for certain days of Newspaper Services"); Ex. B, Second Missouri Action Complaint. ¶¶

10 18-19 (same).)  *See supra*, Section II.

11      The very same California newspapers challenged by Plaintiffs here—including The Fresno Bee,

12 The Sacramento Bee, The Modesto Bee and the Merced Sun-Star—are also at issue in the previously

13 filed Missouri Actions.    (*Compare* First Missouri Action Compl. ¶ 6 ("The particular newspapers

14 published, sold, and distributed by Defendant are…[in] California (The Fresno Bee; Merced Sun-Star;

15 The Modesto Bee; The Sacramento Bee; The Tribune") *with* Second Amended Complaint ¶

16 1("Defendant owns numerous newspapers throughout the state of California, including the Sacramento

17 Bee, the Modesto Bee, and the Fresno Bee").)  Moreover, Plaintiffs here, just like the plaintiffs in the

18 earlier filed Missouri Actions, assert their claims on behalf of a class of California consumers.  (RJN Ex.

19 A, First Missouri Action Complaint ¶¶ 5, 6, 21.)

20      CAFA's local controversy exception has no application in these circumstances.  Indeed, these

21 are precisely the type of copycat cases CAFA was intended to reach.  *See Torres v. CleanNet, U.S.A.,*

22 *Inc.,* No. CIV. NO. 14-2818, 2014 WL 5591037, at *7 (E.D. Pa. Nov. 4, 2014) ("Congress wanted to

23 ensure that defendants did not face copycat, or near copycat, suits in multiple forums and hence

24 excluded from the local controversy exception cases where a defendant was named in multiple similar

25 cases"); *Giannini*, 2012 WL 1535196, at *5 (denying remand, and expressly rejecting plaintiffs'

26 argument that prior class actions were not "similar," because  "earlier cases were concerned with claims

27 brought on behalf of national classes," whereas instant case "alleges violations of California laws,

28 making it more of a local dispute.").

16      OPPOSITION TO MOTION TO REMAND

1    **VI.**    **REMOVAL WAS TIMELY, AND MCCLATCHY DID NOT "WAIVE" ITS RIGHT TO**

2    **REMOVE THIS ACTION.**

3    As the Ninth Circuit Court of Appeals recently held, CAFA removal is timely at *any time* so long

4    as (1) the face of the complaint does not plainly allege all elements needed for diversity jurisdiction; and

5    (2) plaintiff has not served some other "paper" that concedes all elements needed for CAFA jurisdiction.

6    *See Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125-26 (9th Cir. 2013) (a removing

7    defendant may remove "on the basis of its own information, provided that it has not run afoul of either

8    of the thirty-day deadlines" set forth in 28 U.S.C. § 1446(b)(1) and (b)(3); "a defendant's subjective

9    knowledge cannot convert a non-removable action into a removable one such that the thirty-day time

10   limit of § 1446(b)(1) or (b)(3) begins to run against the defendant").[17] Under *Roth*, removal of this

11   action was timely.  None of the pleadings in this lawsuit—be it the Original Complaint, the First

12   Amended Complaint, or the Second Amended Complaint—plainly allege all the elements necessary to

13   establish federal CAFA jurisdiction.  No amount-in-controversy is expressly stated, and the citizenship

14   of the putative class is not discernable from the face of the pleadings or any other "paper."

15   McClatchy was therefore free to investigate the potential bases for CAFA jurisdiction and remove based

16   on that evidence.

17   In their remand motion, Plaintiffs also argue that, even if removal was timely, McClatchy

18   supposedly "waived" its right to remove.  (Mot. at 12:21-22.)  Specifically, Plaintiffs argue McClatchy

19   abandoned  its right to a federal forum by:  (i) filing demurrers to Plaintiffs' Original Complaint; and

20   thereafter, "engag[ing] in pretrial discovery."  (Mot. at 12:21-13:20.)  Plaintiffs are wrong, for at least

21   two reasons.

22

23

24   [17] *See also Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1238 (9th Cir. 2014) (reaffirming *Roth* holding;
     "We also recently held in *Roth v. CHA Hollywood Medical Center, L.P.*, that the two 30–day periods are

25   not the exclusive periods for removal."); *Cutrone v. Mortgage Elec. Registration Sys., Inc.*, 749 F.3d
     137, 148(2d Cir. 2014) (following Roth: "[CAFA's 30-day removal periods] are not triggered until the

26   plaintiff serves the defendant with an initial pleading or other paper that explicitly specifies the amount
     of monetary damages sought or sets forth fact from which an amount in controversy in excess of

27   $5,000,000 can be ascertained…where plaintiff's papers fail to trigger [these removal periods], a
     defendant may remove a case when, upon its own investigation, it determines that the case is

28   removable.").

17    OPPOSITION TO MOTION TO REMAND

First, McClatchy could not have "waived" its right to remove when it filed its demurrers to the Original Complaint because the basis for removal did not exist until the Second Amended Complaint was filed. *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 973 (9th Cir. 2011) ("A waiver of the right of removal must be clear and unequivocal"). As explained in Section II above, the original pleadings were narrower in scope and did not make it unequivocally apparent that CAFA jurisdiction existed. *See Mattel, Inc. v. Bryant*, 441 F. Supp. 2d 1081, 1091 (C.D. Cal. 2005) *aff'd*, 446 F.3d 1011 (9th Cir. 2006) (defendant did not waive right to remove by filing counter-claims, because "it was not unequivocally apparent that the case was removable [before that time].) Plaintiffs' authorities on "waiver" are inapposite, or readily distinguishable.[18]

Second, Plaintiffs distort the procedural history of this case. Plaintiffs' remand motion accuses McClatchy of ducking adverse demurrer rulings in the state court. (Mot. at 2:17, 13:14-17.) But in truth, McClatchy largely prevailed on its demurrers to the Original Complaint. (Dkt 1-1, (Removal Exhibit D, p. 275) Minute Order on Demurrer (dismissing two of the three claims pled by Plaintiff Cortez).) Plaintiffs also assert that McClatchy has engaged in discovery "for almost a year," thereby "manifesting an intent to proceed in state court." (Mot. at 13:18.) But McClatchy has served only limited written discovery in this case. And Plaintiffs largely objected to this discovery as premature, because the pleadings were not yet settled. (Herrington Decl., Ex A, SROG Response Nos. 13-15, Ex. B, RFA Response Nos. 8-13, Ex. C, RFP Response Nos. 8, 10, 13.)

In sum, under the governing case law, McClatchy's removal was timely. *See Rea*, 742 F.3d at 1238; *Roth*, 720 F.3d at 1124-25. Plaintiffs' assertion that McClatchy waived this right to remove is legally, factually and logically baseless.

---

[18] *See* Mot. at 12-13 (citing *Resolution Trust Corp. v. Bayside Developers*, 43 F.3d 1230, 1240 (9th Cir. 1994), *as amended* (Jan. 20, 1995) (finding no waiver under circumstances), *Ettlin v. Harris*, NO. SACV 13-1515-DOC (JPRx), 2013 WL 6178986 *6 (C.D. Cal. Nov. 22, 2013) (explaining that obtaining a ruling on demurrer alone did  not constitute a waiver); *Moore v. Permanente Med. Grp., Inc.*, 981 F.2d 443, 447 (9th Cir. 1992) (discussing waiver generally); *Bolivar Sand Co., Inc. v. Allied Equip., Inc.*, 631 F. Supp. 171, 173 (W.D. Tenn. 1986) (defendant made motions for directed verdict and mistrial before informing state court of intent to remove, and removed only after unfavorable rulings*); Chicago Title & Trust Co. v. Whitney Stores, Inc.*, 583 F. Supp. 575, 576 (N.D. Ill. 1984) (finding waiver where removal attempted on eve of trial date); *Kiddie Rides USA, Inc. v. Elektro-Mobiltechnik* GMBH, 579 F. Supp. 1476, 1480 (C.D. Ill. 1984) (removal untimely).)

18      OPPOSITION TO MOTION TO REMAND

1

## VII.   PLAINTIFFS' REQUEST FOR EXPENSES IS INAPPROPRIATE.

2   "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where

3   the removing party lacked an objectively reasonable basis for seeking removal." *Jordan v. Nationstar*

4   *Mortgage LLC*, 781 F.3d 1178, 1184 (9th Cir. 2015) (reversing award of fees).  Removal is not

5   "objectively unreasonably solely because the removing party's arguments lack merit and the removal is

6   ultimately unsuccessful." *Leon v. Gordon Trucking, Inc.*, 76 F. Supp. 3d 1055, 1073 (C.D. Cal. 2014).

7   Rather, "the court should assess 'whether the relevant case law clearly foreclosed the defendant's basis

8   of removal' by examining the 'clarity of the law at the time of removal." *Id.  See also, Irving v. Okonite*

9   *Co., Inc*, No. 2:15-CV-04821-ODW-SS, 2015 WL 4762457, at *5 (C.D. Cal. Aug. 12, 2015) (explaining

10   that, even if removal is ultimately found to be improper, fees should only be awarded if there "was and

11   is no plausible basis for [] removal.").

12   McClatchy has, at minimum, an "objectively reasonable basis" for removing this action.  All of

13   the threshold predicates to CAFA jurisdiction are present—namely, minimal diversity, numerosity, and

14   the amount-in-controversy.  And, for the reasons explained above, removal was timely, and the "local

15   controversy" and "home state" exceptions to CAFA jurisdiction are inapplicable.  Because no "clearly

16   established law" foreclosed  removal in these circumstances, Plaintiffs' request for expenses  invites

17   clear error, and must be rejected. *Ortiz v. Menu Foods, Inc*., 525 F. Supp. 2d 1220, 1237 (D. Haw.

18   2007)  ("if clearly established law did not foreclose a defendant's basis for removal, then a district court

19   should not award attorneys' fees.").

20   ## VIII.   CONCLUSION

21   For all the foregoing reasons, and for the reasons set forth in McClatchy's Notice of Removal,

22   this action was properly removed.  Plaintiffs' remand motion and request for expenses should be denied.

23   DATED:  October 22, 2015                      Respectfully submitted,

24                                               GREENBERG TRAURIG, LLP

25

26                          By      /s/ *Robert J. Herrington*
                                   Robert J. Herrington
27                                 Benjamin S. Kurtz
                                   *Attorneys for Defendant,*
28                                 *McClatchy Newspapers, Inc.*