William A. Kershaw (State Bar No. 057486)
Lyle W. Cook (State Bar No. 148914)
Stuart C. Talley (State Bar No. 180374)
Ian J. Barlow (State Bar. No. 262213)
KERSHAW, CUTTER & RATINOFF, LLP
401 Watt Avenue
Sacramento, California  95864
Telephone: (916) 448-9800
Facsimile:  (916) 669-4499
Email: wkershaw@kcrlegal.com
Email: lcook@kcrlegal.com
Email: stalley@kcrlegal.com
Email: ibarlow@kcrlegal.com

*Attorneys for Plaintiffs and the Class*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH CORTEZ, BRAD ASBURY, MARGARET FELTS, and BELEN DURFEE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>McCLATCHY NEWSPAPERS, INC.; and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO. 2:15-cv-01891-TLN-EFB<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND**<br><br>Date:  November 5, 2015<br>Time: 2:00 p.m.<br>Courtroom: 2<br>Judge: Hon. Troy L. Nunley<br><br>Complaint Filed: October 2, 2014<br>Action Removed: September 8, 2015 |

**TABLE OF CONTENTS**

Page(s)

I.    INTRODUCTION ................................................................................................................ 1

II.    LEGAL STANDARD .......................................................................................................... 1

III.    ARGUMENT ....................................................................................................................... 2

    A.    Defendant Re-Defines Plaintiffs' Proposed Class To Serve Its Own Purposes ..................................................................................................................... 2

    B.    Plaintiffs Have Satisfied The Requirements of The "Local Controversy" And "Home State" Exceptions ............................................................................... 4

    C.    This Court May Decline Jurisdiction Under 28 U.S.C. § 1332(d)(3) ..................... 8

    D.    Defendant Has Not Met Its Burden of Satisfying The Amount in Controversy Requirement ......................................................................................... 9

    E.    Removal Was Untimely ....................................................................................... 10

IV.    CONCLUSION ................................................................................................................. 10

## **TABLE OF AUTHORITIES**

**CASES**

Page(s)

*Bailey v. Redfin Corp.*, No. CV 14-08959 SJO (MANx),
    2015 U.S. Dist. LEXIS 7446 (C.D. Cal. Jan. 21, 2015) ...................................................... 2

*Benko v. Quality Loan Serv. Corp.*,
    789 F.3d 1111 (9th Cir. 2015) .............................................................................................. 3

*Bridewell-Sledge v. Blue Cross*,
    798 F.3d 923 (9th Cir. 2015) ............................................................................................. 3,8

*Bridewell-Sledge v. Blue Cross of Cal.*, No. CV 14-04744 MMM (CWx),
    2015 U.S. Dist. LEXIS 4500 (C.D. Cal. Jan. 14, 2015) ...................................................... 2

*Calloway v. Affiliated Computer Servs.*, No. 2:13-cv-01648-KJM-DAD,
    2014 U.S. Dist. LEXIS 24636 (E.D. Cal. Feb. 25, 2014) ................................................... 2

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
    135 S. Ct. 547 (2014) ........................................................................................................ 1,2

*Dirrmar v. Costco Wholesale Corp.*, No. 14-CV-1156-LAB-JLB,
    2014 U.S. Dist. LEXIS 156666 (S.D. Cal. Nov. 5, 2014) ................................................ 10

*Flores v. Chevron Corp.*, No. 2:11-cv-02551-JHN-FMOx,
    2011 U.S. Dist. LEXIS 59884 (C.D. Cal. May 31, 2011) .................................................. 5

*Ibarra v. Manheim Invs., Inc.*,
    775 F.3d 1193 (9th Cir. 2015) ............................................................................................ 10

*Joseph v. Unitrin*, No. 1:08-cv-077,
    2008 U.S. Dist. LEXIS 61726 (E.D. Tex. Aug. 12, 2008) ................................................. 5

*L.B.F.R. v. Eli Lilly & Co.*, No. CV 14-9680 PSG (Ex),
    2015 U.S. Dist. LEXIS 30621 (C.D. Cal. Mar. 12, 2015) .................................................. 2

*Lina v. Barnes & Noble, Inc.*,
    2015 U.S. Dist. LEXIS 43886 (C.D. Cal. 2015) ................................................................. 2

*Matheson v. Progressive Specialty Ins. Co.*,
    319 F.3d 1089 (9th Cir. 2003) ............................................................................................. 2

*Quesada v. Herb Thyme Farms, Inc.*, No. CV 11-00016 (SSx),
    2011 U.S. Dist. LEXIS 37697 (C.D. Cal. Mar. 28, 2011) .................................................. 5

*Redick v. Global Contact Solutions, LLC*, No. 3:15-cv-425-PK,
    2015 U.S. Dist. LEXIS 70198 (D. Or. June 1, 2015) ......................................................... 2

**TABLE OF AUTHORITIES, Cont.**

Page(s)

*Romo v. Panda Restaurant Group, Inc.*, No. CV 12-00996 GAF (OPx),
    2012 U.S. Dist. LEXIS 128689 (C.D. Cal. Sept. 7, 2012) .................................................... 4,6

*Roth v. CHA Hollywood*,
    Case No. 2:12-cv-07559-ODW-SHx (C.D. Cal. Sept. 5, 2013) .......................................... 5

*Sabatino v. HMO Mo., Inc. (In re Anthem, Inc. Data Breach Litig.)*,
    2015 U.S. Dist. LEXIS 120916 (N.D. Cal. Sept. 9, 2015) ................................................... 3

*Wickens v. Blue Cross of Cal., Inc.*, No. 15cv834-GPC(JMA),
    2015 U.S. Dist. LEXIS 92143 (S.D. Cal. July 14, 2015) ..................................................... 3

**STATUTES**

28 U.S.C. § 1332(d)(3) ................................................................................................................ 8,9

28 U.S.C. § 1332(d)(4)(A)(ii) ........................................................................................................ 7

28 U.S.C. § 1332(d)(4)(B) ............................................................................................................. 6

## I. INTRODUCTION

Defendant continues to imagine a class definition that Plaintiffs are not asserting. Defendant invokes CAFA jurisdiction by forcing a proverbial square peg into a round hole. However, the class that Defendant wants is simply not there. Plaintiffs' Second Amended Complaint ("SAC") involves: (1) California citizens (2) suing a California defendant; (3) on behalf of a California class; (4) for violations of California statutes; (5) relating to home delivery subscriptions for California newspapers delivered to California homes. It is clear that this case does not and was never intended to reach beyond California.

Along these lines, Defendant also cannot claim with a straight face, even with its revised class definition, that more than one-third of home delivery subscribers to its California newspapers suddenly migrated from the state. It does not say so, because it would not be true. Rather than coming forward with any evidence to the contrary (even though Defendant would have such evidence), it attempts to undermine Plaintiffs' expert and tells the Court that it is not permitted to use "common sense" or "inferences" to decide this motion. Defendant is wrong.

Defendant also attempts to invoke CAFA jurisdiction by accusing Plaintiffs of merely "copying" complaints filed in Missouri. However, the purportedly related cases it cites are against an entirely different defendant, involve different allegations and state law claims, and relate to different newspapers. There is no overlap between the actions here and the lawsuits pending in Missouri. Defendant has also failed to provide adequate evidence in support of the minimum controversy requirement and failed to remove in a timely basis.

Defendant is attempting to manufacture federal jurisdiction in a case that squarely belongs in state court. Its removal efforts are tactical and were initiated in hopes of eventually bringing an opinion denying class certification in another, unrelated, case to bear on this one. Defendant's bases for removal are unreasonable and such gamesmanship should not be rewarded.

For the reasons described below, Plaintiffs' Motion to Remand ("Motion") should be granted.

## II. LEGAL STANDARD

Defendant cites *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547 (2014) ("*Dart*") to argue that there is no longer a presumption against removal under CAFA. (Opp. to Pls.'

-1-

Mot. to Remand and Req. for Expenses ("Opp.") 6. [Dkt. No. 7].) However, California district courts continue to hold—post-*Dart*—that a presumption against removal applies under CAFA.[1] Post-*Dart* courts analyzing CAFA removal have held that *Dart* "did nothing to change the presumption against *federal jurisdiction*," *Lina v. Barnes & Noble, Inc.*, No. CV 15-281-GHK (CWx), 2015 U.S. Dist. LEXIS 43886, at *7-8 (C.D. Cal. Apr. 1, 2015) (emphasis in the original), and that "factual questions regarding the basis of removal are generally to be resolved in favor of remanding the case to state court." *Redick v. Global Contact Solutions, LLC*, No. 3:15-cv-425-PK, 2015 U.S. Dist. LEXIS 70198, at *3 (D. Or. June 1, 2015) (citing *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003)). Even if *Dart* did change the presumption, Defendant cannot dispute that the removing party shoulders the burden of proving that federal jurisdiction is proper under CAFA, which it has failed to do.

### III.  ARGUMENT

#### A.  Defendant Re-Defines Plaintiffs' Proposed Class To Serve Its Own Purposes

In the same breath that Defendant quotes Plaintiffs' proposed class definition, it re-organizes "elements" of the definition so that it has some chance of triggering federal jurisdiction. It correctly states that "Plaintiffs define their class as '[a]ll persons in California who subscribed to' one of McClatchy's newspapers'" but, in the very next sentence, misstates that the definition consists of three requirements: "the person must have (i) 'subscribed to' one of McClatchy's newspapers; (ii) 'in California,' (iii) from January 1, 2010, to the date of judgment." (Opp. 7.)

As it did in its Notice of Removal (Notice of Removal 6-7 [Dkt. No. 1]), and as Plaintiffs pointed out in their remand motion (Mot. 6-7), Defendant is transforming the proposed class definition from one expressly limited to "persons in California" into a broader definition that reaches anyone who ever "subscribed in California" (but could include people from throughout the nation). However, plaintiffs, not the defendant, are the "masters of their complaint." *See*, *e.g.*, *Calloway v. Affiliated Computer Servs.*, No. 2:13-cv-01648-KJM-DAD, 2014 U.S. Dist. LEXIS 24636, at *18-19 (E.D. Cal. Feb. 25,

---

[1] *See*, *e.g.*, *L.B.F.R. v. Eli Lilly & Co.*, No. CV 14-9680 PSG (Ex), 2015 U.S. Dist. LEXIS 30621, at *4 (C.D. Cal. Mar. 12, 2015); *see also Bailey v. Redfin Corp.*, No. CV 14-08959 SJO (MANx), 2015 U.S. Dist. LEXIS 7446, at *4 (C.D. Cal. Jan. 21, 2015); *Bridewell-Sledge v. Blue Cross of Cal.*, No. CV 14-04744 MMM (CWx), 2015 U.S. Dist. LEXIS 4500, at *12 (C.D. Cal. Jan. 14, 2015).

2014).

Plaintiffs' SAC is limited to *current citizens of California*, who are asserting violations of California statutes; against a California defendant; for misconduct relating to subscriptions for the home delivery of California newspapers.  This case could not involve more localized, intrastate issues; it does not and was never intended to involve citizens outside of California.  In fact, Plaintiffs could not structure their case to reach beyond California because, as Defendant argues, "[t]he California consumer protection statutes at issue in this case apply to conduct in California, *but not extraterritorially*." (Opp. 7 (emphasis added).)

As a result, while Defendant continues to contact individuals whom it believes, or whom it would like, to be putative class members for purposes of avoiding state court jurisdiction, Catherine Murphy (Dkt. No. 1-5) and Dale March (Dkt. No. 7-3) are not in the proposed class.  CAFA's underlying purpose, to curb "'*multistate* or even *national* class actions in state courts,'" is not remotely implicated.  *Bridewell-Sledge v. Blue Cross*, 798 F.3d 923, 927 (9th Cir. 2015) (emphasis added) (citations omitted).

In any event, should additional clarification of the class definition be required so that it becomes crystal clear that California "residents" (SAC ¶¶ 8-11) on behalf of "similarly situated individuals" (*id.* at p. 1), and a class consisting of "persons in California" (*id.* ¶ 48) means "California citizens," leave should be granted to amend the class definition.  Although the word "citizens" was not included in the initial class definition, it was unnecessary since any distinction between residence and citizenship for pleading purposes "only became relevant when Defendant[ ] sought removal to federal court under CAFA."  *See Sabatino v. HMO Mo., Inc. (In re Anthem, Inc. Data Breach Litig.)*, Nos. 15-MD-02617-LHK and 15-CV-2873-LHK, 2015 U.S. Dist. LEXIS 120916, at *57 (N.D. Cal. Sept. 9, 2015).  Under such circumstances, courts are free to grant leave to amend in order to clarify jurisdictional questions.  *See, e.g.*, *Benko v. Quality Loan Serv. Corp.*, 789 F.3d 1111, 1117 (9th Cir. 2015); *see also Wickens v. Blue Cross of Cal., Inc.*, No. 15cv834-GPC(JMA), 2015 U.S. Dist. LEXIS 92143, at *12-13 (S.D. Cal. July 14, 2015).

/ / /

/ / /

**B.     Plaintiffs Have Satisfied The Requirements Of The "Local Controversy" And "Home State" Exceptions**

**1.     The "Two-Thirds" Requirement Is Met**

Defendant contends that Plaintiffs have failed to establish that it is "more likely than not"[2] that at least two-thirds of the putative class are California citizens. To reach this conclusion, Defendant first claims that the Court cannot use "common sense" in evaluating whether two-thirds of the putative class are California citizens. However, while Defendant would like to equate "common sense" with "speculation" and "guesswork" (Opp. 12-13), a common sense approach is entirely appropriate here, where Plaintiffs have pled a class that is limited to California consumers who subscribed for home delivery of local California newspapers.

Defendant argues that a common sense evaluation cannot be made by citing to non-California law and through weak attempts to distinguish on-point district court cases in California. For example, Defendant contends that *Romo v. Panda Restaurant Group, Inc.*, No. CV 12-00996 GAF (OPx), 2012 U.S. Dist. LEXIS 128689 (C.D. Cal. Sept. 7, 2012) should not apply to this case. (Opp. 13 n.15.) In *Romo*, the court exclusively analyzed the home state controversy exception under CAFA. *Romo*, 2012 U.S. Dist. LEXIS 128689, at *2. The putative class at issue was not defined with reference to residency or citizenship, but it was limited to California. *Id.* at *1. As Defendant in this case concedes (Opp. 13 n.15), the court expressly held that "*courts in this Circuit have not shied from making common sense judgments as to the citizenship of purported class members*." *Romo*, 2012 U.S. Dist. LEXIS 128689, at *9-10 (emphasis added). The *Romo* court then made a common sense determination, in conjunction with statistical data, that out of a putative class of 14,000 employees in California "[t]he likelihood that 4,620 members of that class are not California citizens . . . is highly unlikely." *Id.* at *10-11. Defendant in this case argues that *Romo*'s common sense findings were not "central" to its holding. (Opp. 13 n.15.) However, the court's common sense analysis of putative class members' citizenship in *Romo* fell under a separate heading, entitled "Common Sense and Preponderance," and the court expressly held that other California district court cases that applied such a common sense approach were "persuasive." *Romo*, 2012 U.S. Dist. LEXIS 128689, at *9-10.

---

[2] (*See*, *e.g.*, Notice of Removal 8 and Mot. 9 (describing the preponderance of the evidence standard).)

-4-

Similarly, *Quesada v. Herb Thyme Farms, Inc.*, No. CV 11-00016 (SSx), 2011 U.S. Dist. LEXIS 37697 (C.D. Cal. Mar. 28, 2011), analyzed a class definition that was "limited to purchasers within California" but contained no references to residency or citizenship. *Id.* at *9. The court held that "if a complaint asserts 'claims only on behalf of California purchasers,' then 'greater than two-thirds of the members' are citizens of California." *Id.* at *9 (quotation omitted). The court found that the plaintiff satisfied the local controversy exception. *Id.* at *9-10.[3]

To be sure, several district courts in California and other states agree or are consistent with the holdings in *Roth* and *Quesada*. *See*, *e.g.*, *Flores v. Chevron Corp.*, No. 2:11-cv-02551-JHN-FMOx, 2011 U.S. Dist. LEXIS 59884, at *9-10 (C.D. Cal. May 31, 2011) (it was "reasonable" to construe a complaint brought on behalf of "California purchasers" as satisfying the "two-thirds" requirement); *Joseph v. Unitrin*, No. 1:08-cv-077, 2008 U.S. Dist. LEXIS 61726, at *16-18 (E.D. Tex. Aug. 12, 2008) ("Courts have acknowledged that where, as here, a proposed class is discrete in nature, a common sense presumption should be utilized . . . . [Plaintiff] has styled her petition in a manner that inherently characterizes potential plaintiffs as residents of Texas.").

Also, if common sense was not enough, the declaration from Plaintiffs' demography expert further establishes that the two-thirds requirement is met. Defendant argues, incorrectly, that Dr. Gobalet's declaration does not tie the American Community Survey ("ACS") migration study to the legal residency or citizenship of Defendant's subscriber base. (Opp. 14.) However, the ACS study describes migration patterns of California residents over the putative class period. (Decl. of Jeanne Gobalet in Supp. of Pls.' Mot. to Remand ("Gobalet Decl.") ¶¶ 8-9 [Dkt. No. 6-3].) Furthermore, Defendant cannot deny that the "subscriber base" for the *Sacramento Bee*, *Fresno Bee*, *Modesto Bee*, *San Luis Obispo Tribune*, and *Merced Sun-Star* is in California. As a result, there is a clear link between the ACS study of migratory patterns of California residents and Defendant's subscribers.

In fact, for Defendant's position to be correct (that more than one-third of its subscriber base

---

[3] Defendant argues that *Quesada* is simply an "inaccurate representation of current law" because Judge Wright, who rendered the opinion in *Quesada*, later found in *Roth v. CHA Hollywood*, Case No. 2:12-cv-07559-ODW-SHx (C.D. Cal. Sept. 5, 2013), that "mere residence" was not sufficient for establishing citizenship. (Opp. 13 n.15). However, the *Roth* case, which appears to be unreported or unpublished, did not involve claims made "only on behalf of California purchasers," as in *Quesada* and this case. As a result, Judge Wright's rulings in *Roth* do not represent a departure from *Quesada*.

-5-

permanently left the state), there would have to be a mass migration of U.S. citizens not seen since the Great Dust Bowl.  As such, Defendant completely misses the point when it argues that "Plaintiffs and Dr. Gobalet do not establish whether the putative class members were citizens to begin with."  (Opp. 14.)  The point of Dr. Gobalet's opinion is that California has not experienced the mass migration that Defendant would need to avoid the local controversy exception to CAFA.  Instead, the evidence establishes that a miniscule "two percent" of Californians moved from the state each year and that "more than 90 percent of persons living in California in 2010 still lived there in 2014."  (Gobalet Decl. ¶¶ 8-9.)  Dr. Gobalet then makes the logical inference that it is "extremely unlikely that at least one third of McClatchy newspaper subscribers who subscribed to papers while California residents no longer reside within California."  (*Id.* ¶ 10.)[4]

What is most telling however, is that Defendant submits absolutely no evidence to support its "mass migration" hypothesis.  It is undisputed that Defendant has access to information for every subscriber to its newspapers over the past four years.[5]  As such, it could easily establish whether one-third of its California subscribers suddenly left the state.  Yet, Defendant sits on that information while arguing that Plaintiffs are not entitled to jurisdictional discovery.  (Opp. 15 n.16.)

### 2. There Have Been No Substantially Similar Cases Filed Within The Previous Three Years To Implicate The Local Controversy Exception

Defendant contends that the local controversy exception does not apply because, during the three years preceding the filing of the complaint, a class action was filed asserting the same factual allegations on behalf of the same class as the present case.[6]  (Opp. 15-16.)  Specifically, Defendant points to two class actions that were filed in Missouri by the same plaintiffs: *O'Shaughnessy v. The McClatchy Company* (the "McClatchy Co. Case") and *O'Shaughnessy v. Cypress Media, LLC* (the

---

[4] Indeed, Dr. Gobalet's ACS analysis is strikingly similar to the ACS analysis performed in *Romo*, which found that "taking Plaintiff's evidence as a general statement regarding the migration patterns of Californian's [sic] as a whole, it is relevant inferential evidence to support the common sense notion that people who live in California overwhelmingly tend to stay here."  *Romo*, 2012 U.S. Dist. LEXIS 128689, at *9.

[5] (*See* Decl. of Marshall McDowell in Supp. of Def. McClatchy Newspapers, Inc.'s Opp. to Pls.' Remand Mot. ("McDowell Decl.") (Dkt. No. 7-4) and Decl. of Maria Rivera in Supp. of Def. McClatchy Newspapers, Inc.'s Opp. to Pls.' Remand Mot. ("Rivera Decl.") (Dkt. No. 7-5).)

[6] Notably, the "three-year" inquiry is not required under the "home state" exception.  28 U.S.C. § 1332(d)(4)(B).  Consequently, the "home state" exception is satisfied as well.

"Cypress Case"). (Opp. 15-16.) However, a review of the pleadings in those cases reveals that they do not involve the same defendants, the same newspapers, the same factual allegations, or the same class.

Specifically, the McClatchy Co. Case was filed on April 16, 2013. In that case, plaintiffs were Missouri citizens who subscribed to the *Kansas City Star*. According to the complaint, the case was premised on the *Star's* practice of double billing subscribers who renewed their subscriptions before their previous subscription expired. Although McClatchy Company did not own the *Kansas City Star*, it was named as the only defendant in the case.

The McClatchy Company specially appeared to file a motion to dismiss. In its motion, it argued that there was no personal jurisdiction over McClatchy Company since the *Kansas City Star* was owned and operated by an entirely separate entity, Cypress Media. McClatchy Company argued that it did not do business as Cypress Media, had no presence in Missouri, and played absolutely no role in the *Kansas City Star*'s advertising, billing practices or the conduct giving rise to the allegations in the complaint. (Pls.' Req. for Judicial Notice in Supp. of Reply to Remand Mot. ("Pls.' RJN"), Ex. C at 5.) Before the court could rule on McClatchy Company's motion and before it ever appeared in the action, plaintiffs voluntarily dismissed the case without prejudice. (Pls.' RJN, Ex. A.)

Thereafter, the plaintiffs refiled a virtually identical case against the proper defendant, Cypress Media. McClatchy Company was not a defendant in the Cypress Case. In the refiled action, the plaintiffs sought to certify a class consisting solely of subscribers to the *Kansas City Star* who were double billed for their subscriptions when they renewed before their expiration date.

The two Missouri actions are clearly not the "same class actions" pursuant to 28 U.S.C. § 1332(d)(4)(A)(ii). First, the defendant in the McClatchy Co. Case is not the same defendant named in this case. In the McClatchy Co. Case, the plaintiffs named *The McClatchy Company as a defendant; not McClatchy Newspapers Inc*. Also, even if these were the same corporations (and they are not) the McClatchy Company was dismissed soon after plaintiffs filed their initial complaint because it played no role in the management of the *Kansas City Star*. Here, Plaintiffs' allegations squarely relate to *McClatchy Newspapers, Inc.'s* conduct and is based entirely on *its* billing practices. The case here does not implicate any activities of The McClatchy Company or Cypress Media.

Second, the Missouri cases do not arise from the same factual allegations as this case. In those

actions the plaintiffs' allegations related to the practice of double billing *Kansas City Star* subscribers who renewed their subscription early. According to McClatchy Company, the alleged billing practices were carried out solely by *Cypress Media* under its own policies and McClatchy Company had absolutely no role in directing or establishing those policies. (*See* Pls.' RJN, Ex. C at 5.) In the present case, Plaintiffs' allegations relate entirely to the policies of McClatchy Newspapers, Inc. in connection with its California newspapers and do not concern double billing or early renewal practices. Clearly the cases are substantially different.

Third, the Missouri cases were not brought on behalf of the same class. Plaintiffs in this case are seeking to certify a class of California subscribers to California newspapers involving violations of particular California statutes. The putative class in the Missouri cases was ultimately limited to *Kansas City Star* subscribers pursuing claims under Missouri law.

Finally, in deciding whether the Missouri cases constitute the "same class action," it is important to consider the legislative intent underlying the "previous class action" requirement. The Ninth Circuit explained in *Bridewell-Sledge v. Blue Cross*, 798 F.3d 923 (9th Cir. 2015) that the purpose of the fourth prong of the local controversy exception is "'to ensure that overlapping or competing class actions or class actions making similar factual allegations against the same defendant that would benefit from coordination are not excluded from federal court by the Local Controversy Exception and thus placed beyond the coordinating authority of the Judicial Panel on Multidistrict Litigation.'" *Id.* at 932 (citation omitted). The concern is that without removal, "competing" class actions in state and federal court would have to be litigated separately in an uncoordinated, redundant fashion. *Id.*

Here, these policy considerations simply do not apply. The claims in this action and the Missouri actions do not overlap and this case is not a "competing class action." As such, the local controversy exception to CAFA applies.

### C. This Court May Decline Jurisdiction Under 28 U.S.C. § 1332(d)(3)

Plaintiffs have also expressly requested that the Court decline jurisdiction "in the interests of justice" and based on "the totality of the circumstances" pursuant to 28 U.S.C. § 1332(d)(3). (Mot. 11 n.4.) Defendant does not dispute that 28 U.S.C. § 1332(d)(3) applies and instead altogether ignores Plaintiffs' request.

-8-

Under 28 U.S.C. § 1332(d)(3), a district court may decline to exercise jurisdiction

> in the interests of justice and looking at the totality of the circumstances . . . [where] greater than one-third but less than two-thirds of the members of all proposed plaintiff classes . . . and the primary defendants are citizens of the State in which the action was originally filed based on consideration of--
>
> (A)   whether the claims asserted involve matters of national or interstate interest;
> (B)   whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;
> (C)   whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;
> (D)   whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;
> (E)   whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and
> (F)   whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

*Id.*

As discussed above, Plaintiffs have established that at least one-third of the putative class are California citizens and that identical or similar actions have not been brought within the previous three years, under factor (F). Also, under factors (A) and (B), Plaintiffs' claims address purely localized, intrastate misconduct and are limited to violations of California statutes. Plaintiffs also did not design their complaint to artificially avoid federal jurisdiction under factor (C). Rather, the SAC reflects the limited nature of Plaintiffs' claims, which are asserted by California residents, on behalf of California consumers, against a California defendant for violations of California statutes involving the home delivery of local California newspapers. Factor (D) is satisfied for these same reasons. In addition, as discussed above, there are a greater number of California citizens in the class than in any other state, and the class of California home delivery subscribers to Defendant's local California newspapers are not "dispersed among a substantial number of States" under factor (E).

As a result, this Court may decline to exercise jurisdiction.

### D.   Defendant Has Not Met Its Burden Of Satisfying The Amount In Controversy Requirement

Defendant has failed to submit sufficient evidence in support of the amount in controversy requirement. A defendant cannot establish the amount in controversy under CAFA by mere speculation

-9-

and conjecture based on unreasonable assumptions. *See*, *e.g.*, *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197, 1199 (9th Cir. 2015).

Defendant's declarations, from "Audience Development" officers are generalized and unsubstantiated. They consist merely of conclusory statements referencing "billing and account records" followed by a total sum. The declarants fail to describe what formulas were used to arrive at the calculations, what calculations were made, how many records were calculated or the reliability of the records, and what criteria were used to determine whether certain records should be included in the calculations. Without more, these unsupported amounts are unreliable and speculative. *See*, *e.g.*, *Dirrmar v. Costco Wholesale Corp.*, No. 14-CV-1156-LAB-JLB, 2014 U.S. Dist. LEXIS 156666, at *12-13 (S.D. Cal. Nov. 5, 2014) (amount in controversy requirement was not met where defendant submitted declarations that relied on improper assumptions and estimates).

### E. Removal Was Untimely

Defendant attempts to have it both ways by claiming that CAFA was not implicated in Plaintiffs' SAC while at the same time arguing that the SAC, for the first time, prompted removal. (Opp. 17-18.) To be sure, Defendant expressly states that "the basis for removal did not exist until the [SAC] was filed" and compares it to Plaintiffs' initial pleadings, which "did not make it unequivocally apparent that CAFA jurisdiction existed." (Opp. 18.) However, Defendant fails or refuses to explain how the SAC's expanded class definition changed its removal analysis without providing it with notice that grounds for removal existed. As a result, Defendant's removal is untimely. Moreover, Defendant has fully availed itself of state court proceedings by filing two demurrers, receiving partially adverse rulings on one, and exchanging and negotiating discovery with Plaintiffs.

## IV. CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court grant their motion to remand and reimburse Plaintiffs for the expert costs incurred in preparing their motion.

Dated: October 29, 2015.                    KERSHAW, CUTTER & RATINOFF, LLP

By: */s/ Stuart C. Talley*
　　Stuart C. Talley
　　*Counsel for Plaintiffs and the Class*

-10-