1
2
3
4
5
6
7

8          UNITED STATES DISTRICT COURT

9          EASTERN DISTRICT OF CALIFORNIA

10

11  JOSEPH CORTEZ, BRAD ASBURY,              No.  2:15-cv-01891-TLN-EFB
    MARGARET FELTS, and BELEN
12  DURFEE, individually and on behalf of all
    others similarly situated,
13                                           **ORDER**
              Plaintiffs,
14
         v.
15
    McCLATCHY NEWSPAPERS, INC., and
16  DOES1 through 50,

17            Defendants.

18

19        This matter, a putative class action, is before the Court pursuant to a Motion to Remand

20  (ECF No. 6) brought by Plaintiffs Joseph Cortez, Brad Asbury, Margaret Felts, and Belen Durfee

21  (collectively "Plaintiffs"), and a Motion to Dismiss (ECF No. 4) under Federal Rule of Civil

22  Procedure 12(b)(6) brought by Defendant McClatchy Newspapers, Inc. ("Defendant").[1]  Both

23  motions are opposed.  (ECF Nos. 7 & 8.)  After careful consideration, and for the reasons set

24  forth below, the Court hereby GRANTS Plaintiffs' Motion to Remand and DENIES AS MOOT

25  Defendant's Motion to Dismiss.

26

27        [1] Plaintiffs submit that Defendant McClatchy Newspapers, Inc. was voluntarily dismissed, and the other Doe
    Defendants have not yet been named.  (ECF No. 6-1 at 14.)  The parties do not indicate this dismissal affects the
28  Court's ruling here.

1

I.      **Factual and Procedural Background**

On or about October 2, 2014, Plaintiff Joseph Cortez, individually and on behalf of others similarly situated, filed a Class Action Complaint against Defendant, a corporation owning several newspapers throughout California, in the Superior Court of California, County of Sacramento.  (ECF No. 1-1.)  Plaintiff Joseph Cortez filed a First Amended Complaint on or about April 24, 2015, after the Superior Court partially sustained Defendant's demurrers to the original complaint.  (ECF No. 1-2.)

On or about July 30, 2015, Plaintiff Joseph Cortez, together with Plaintiffs Brad Asbury, Margaret Felts, and Belen Durfee, filed a Second Amended Complaint ("SAC") in the Superior Court of California, County of Sacramento.  (ECF No. 1-3.)  Plaintiffs' claims arise from Defendant's allegedly false and misleading billing practices in connection with newspaper subscriptions.  (ECF No. 1-3 at ¶ 1.)  Plaintiffs identity four allegedly unlawful practices:

- Defendant solicits subscribers without adequately disclosing its automatic renewal policy, and often increases the subscription price upon renewal.  (ECF No. 1-3 ¶ 2.)
- Defendant continues to deliver newspaper after a subscription period has ended, and then charges the subscriber for that extended period.  (ECF No. 1-3 ¶ 3.)
- In circumstances where a subscriber receives a bill for the unwanted extended period, Defendant will tell the subscriber that it will waive the amount if the subscriber renews for another period.  Defendant will then "backdate the start date of the new subscription to the date the previous subscription expired."  (ECF No. 1-3 ¶ 4.)
- Defendant provides promotional materials which falsely convey the length of a subscription period.  Specifically, Defendant charges $1-per-day extra for a 9-day "special edition" period, and then "reduces the consumer's subscription period to recoup the $9 charge."  Subscribers are not given the option of refusing delivery of the special edition newspaper.  (ECF No. 1-3 ¶ 5.)

Based on these alleged violations, Plaintiffs bring three causes of actions under three separate California statutory schemes: California's Automatic Renewal Law, Business & Professions Code § 17600 *et seq.*; California's Unfair Competition Law ("UCL"), Business &

1  Professions Code § 17200 *et seq.*; and California's Consumer Legal Remedies Act, California

2  Civil Code § 1750, *et seq.*  (ECF No. 1-3 at ¶¶ 53–74.)

3  Plaintiffs seek to represent a putative class defined as follows:  "All persons in California

4  who subscribed to any of the Defendant's newspapers from January 1, 2010 to the date of final

5  judgment."  (ECF No. 1-3 at ¶ 48.)

6  On September 8, 2015, Defendant filed a Notice of Removal alleging this Court has

7  jurisdiction over the case pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §

8  1332(d).  (ECF No. 1.)  On September 15, 2015, Defendant filed a Motion to Dismiss the SAC

9  contending that Plaintiffs fail as a matter of law to state a claim upon which relief can be granted.

10  (ECF No. 4.)  Currently, Plaintiffs have filed a Motion to Remand the case on the basis that the

11  initial requirements of CAFA are not met, and additionally that one or more exceptions applies.

12  (ECF No. 6.)  The parties have filed Oppositions and Replies relative to each of the

13  aforementioned motions.[2]  (ECF Nos. 7–10.)

14  **II.**     **Legal Framework**

15  "[A]ny civil action brought in a State court of which the district courts of the United

16  States have original jurisdiction, may be removed by the defendant or the defendants, to the

17  district court of the United States for the district and division embracing the place where such

18  action is pending."  28 U.S.C. § 1441(a).  However, "[i]f at any time before final judgment it

19  appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28

20  U.S.C. § 1447(c).

21  Relevant to this action, CAFA gives federal district courts jurisdiction where: (1) the

22

23  [2] Additionally, Defendant requests judicial notice of the complaints filed in related litigation, *O'Shaughnessy v. The McClatchy Company*, Case No. 4:13-cv-00492 (W.D. Mo. 2013) and *O'Shaughnessy v.*

24  *Cypress Media, L.L.C.*, Case No. 4:13-cv-0947 (W.D. Mo. 2013), and the court's opinion in *Roth v. CHA Hollywood*, Case No. 2:12-cv-07559-ODW-SHx (Dkt. 48) (C.D. Cal. Sept. 5, 2013).  The Court takes judicial notice of the

25  aforementioned complaints for the fact that this litigation occurred and that certain representations were made therein by the parties to those actions.  *See NuCal Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 984 (E.D. Cal.

26  2012).  The Court notes the *Roth* decision as supplemental authority.  (*See* ECF No. 7-6.)
        Plaintiffs request judicial notice of the court dockets in each of the aforementioned *O'Shaughnessy* actions,

27  and the "Suggestions in Support of Motion to Dismiss for Lack of Personal Jurisdiction and Lack of Service and Supporting Exhibits" filed on May 23, 2013, in the *O'Shaughnessy* action, Case No. 4:13-cv-00492.  The Court takes

28  judicial notice of these documents for the fact that this litigation occurred and that certain representations were made therein by the parties to those actions.  (*See* ECF No. 7-1.)

3

1   matter in controversy exceeds the sum or value of $5,000,000; (2) the number of members of all

2   proposed plaintiff classes in the aggregate is 100 or greater; and (3) there is minimal diversity

3   between the defendants and plaintiffs.  28 U.S.C. § 1332(d).

4        "[N]o antiremoval presumption attends cases invoking CAFA, a statute Congress enacted

5   to facilitate adjudication of certain class actions in federal court."  *Dart Cherokee Basin*

6   *Operating Co., LLC v. Owens*, 135 S. Ct. 547, 550 (2014).  However, "[t]he burden of

7   establishing removal jurisdiction under CAFA lies with the proponent of federal jurisdiction."

8   *Turner v. Corinthian Int'l Parking Servs.*, *Inc.*, No. C 15-03495 SBA, 2015 WL 7768841, at *1

9   (N.D. Cal. Dec. 3, 2015) (citing *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1199 (9th

10  Cir. 2015)).  "CAFA's requirements are to be tested by consideration of real evidence and the

11  reality of what is at stake in the litigation, using reasonable assumptions underlying the

12  defendant's theory of damages exposure."  *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193,

13  1198 (9th Cir. 2015).  "Where facts are in dispute, the statute requires district courts to make

14  factual findings before granting a motion to remand a matter to state court."  *Mondragon v.*

15  *Capital One Auto Fin.,* 736 F.3d 880, 883 (9th Cir. 2013).

16       Assuming *arguendo* that Defendant has met its burden of showing removal is proper

17  under CAFA, Plaintiffs may establish an exception – relevant here, the "home state" exception –

18  to CAFA jurisdiction.  *See Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 822 (8th Cir.

19  2010) ("CAFA grants broad federal jurisdiction over class actions and establishes narrow

20  exceptions to such jurisdiction").  The home state exception to CAFA provides:

21           A district court shall decline to exercise jurisdiction … [if] two-
22           thirds or more of the members of all proposed plaintiff classes in
             the aggregate, and the primary defendants, are citizens of the State
23           in which the action was originally filed.

24  28 U.S.C. § 1332(d)(4)(B).  "Once federal jurisdiction has been established under CAFA, the

25  party seeking remand bears the burden of proof as to the applicability of any statutory exception."

26  *Turner*, 2015 WL 7768841, at *1; *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1024 (9th Cir.

27  2007).  The parties agree that the applicable standard for establishing the home state exception is

28  a "preponderance of the evidence" standard.  (ECF No. 6-1 at 13; ECF No. 7 at 17.)  *See*

4

1    *Mondragon*, 736 F.3d at 884 ("A district court makes factual findings regarding jurisdiction under

2    a preponderance of the evidence standard").

3    **III.    Analysis**

4    A.    <u>Class Definition</u>

5    The Court "shall decline" to take jurisdiction over claims that fall under the home state

6    exception.  28 U.S.C. § 1332(d)(4)(B).  The Court has carefully considered the arguments raised

7    relative to this exception, and finds that, assuming *arguendo* that the initial requirements for

8    CAFA jurisdiction are met, Plaintiffs show by a preponderance of the evidence that the home

9    state exception applies.  Therefore, for the reasons stated below, this action must be remanded.[3]

10   The parties do not dispute that Defendant is a citizen of California.  (ECF No. 1 at 8; ECF

11   No. 1-3 ¶ 7.)  Thus, the sole issue is whether "two-thirds or more of the members of all proposed

12   plaintiff classes in the aggregate" are citizens of California.  28 U.S.C. § 1332(d)(4)(B).  "The

13   natural person's state citizenship is then determined by her state of domicile, not her state of

14   residence.  A person's domicile is her permanent home, where she resides with the intention to

15   remain or to which she intends to return."  *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th

16   Cir. 2001).  The Court looks first to the putative class definition:

17
         All persons in California who subscribed to any of the Defendant's
         newspapers from January 1, 2010 to the date of final judgment.
18

19   (ECF No. 1-3 at ¶ 48.)  There is a dispute over what persons are covered under this definition.  In

20   their Motion to Remand, Plaintiffs state the proposed class "*only* includes Californians" and the

21   class does not include "Non-California Residents."  (ECF No. 6-1 at 10.)  Plaintiffs state the class

22   excludes former Californians who subscribed to Defendant's newspapers as well as any current or

23   former out-of-state subscribers.  Plaintiffs state: "by definition, if a person is no longer in

24   California but subscribed to Defendant's newspapers … that person is not in the class."  (ECF

25   No. 6-1 at 11.)  In their Reply, Plaintiffs state directly that the class is limited to "current citizens

26

27   _____

     [3] Because the Court finds the home state exception applies, the Court will assume *arguendo* that the initial
28   requirements for CAFA jurisdiction are met under 28 U.S.C. 1332(d).  The Court does not reach whether remand is
     also required under the "local controversy" exception, 28 U.S.C. § 1332(d)(4)(A), or whether removal was timely.

1  of California."  (ECF No. 10 at 7, emphasis omitted.)

2      Defendant construes the proposed class to be: "a putative class of all persons who

3  subscribed to McClatchy's newspapers in California."  (ECF No. 1 ¶ 23.)  Thus, Defendant

4  argues the class could include non-California citizens: persons who may have been in California

5  at the time of their subscription purchase, but who now live permanently in another state.

6  Defendants submit evidence that putative class member C.M. subscribed to the Sacramento Bee

7  while living in California from 2009 to 2011.  However, in June 2011, C.M. relocated to Florida

8  where she now resides and intends to remain indefinitely.  (C.M. Decl., ECF No. 1-5.)  Putative

9  class member D.M. currently subscribes to the Sacramento Bee, which is delivered to his second

10  home in California.  D.M. lives in California about three to four months out of the year, but

11  maintains his primary residence and his citizenship in Arizona.  (D.M. Decl., ECF No. 7-3.)

12      Alternatively, Defendant argues that Plaintiffs cannot, via their Motion to Remand, now

13  re-define their class to include only current California residents.[4]  Defendant argues that

14  Plaintiffs' position would lead to "absurd results."  (ECF No. 7 at 13.)  Defendant argues that if

15  Plaintiffs' "redefinition" were accepted, individualized determinations as to class members'

16  locations would have to be made on a continuous basis, because subscribers might pass in and out

17  of the class depending on their current location.  (ECF No. 7 at 14.)

18      Defendant's argument that Plaintiffs are redefining the class in their Motion to Remand is

19  not well taken because Defendant obviously redefines the class in its Opposition: "a putative class

20  of all persons who subscribed to McClatchy's newspapers in California."  (ECF No. 7 ¶ 23.)

21  Defendant takes the "in" and connects it more closely to "subscribing," and so argues that the

22  class means anyone who subscribed in California whether or not they live there now.  But that is

23  not what the proposed definition says.  The proposed definition says: "All persons in California

24  who subscribed to any of the Defendant's newspapers from January 1, 2010 to the date of final

25      [4] Defendant argues: "Under Plaintiffs' attempted redefinition of the class someone like [C.M.], who
26  subscribed in California and then moved out of state, would *not* be covered, even though the UCL ostensibly applies
to [Defendant's] subscription and renewal practices in California.  But someone who subscribed out of state and then
27  later moved to California would be covered, even though that subscriber would have no UCL claim (because the
UCL does not apply to conduct occurring outside the state)."  (ECF No. 7 at 14.)  To the contrary, it is possible that
an out-of-states subscriber could bring a UCL claim in California, where the facts involved California newspapers
28  owned by a California corporation making use of illegal subscription practices.

1    judgment." (ECF No. 1-3 at ¶ 48.)  It is a reasonable interpretation of that definition that it refers

2    to people currently in California who subscribed to Defendant's newspapers at some point after

3    2010.

4         At best, Defendant notes ambiguity in the proposed class definition; but Defendant may

5    not substitute its version of the class definition in order to defeat the home state exception.

6    Plaintiffs rightly point out that they are "master of the complaint." *Calloway v. Affiliated*

7    *Computer Servs., Inc.,* No. 2:13-CV-01648-KJM, 2014 WL 791546, at *7 (E.D. Cal. Feb. 25,

8    2014) (precluding defendants from using employees of a non-party corporate affiliate – i.e. an

9    entity not named by plaintiffs in the complaint – when calculating the jurisdictional amount for

10   CAFA purposes). *See also Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–99 ("But the presence

11   of a federal question … in a defensive argument does not overcome the paramount policies

12   embodied in the well-pleaded complaint rule—that the plaintiff is the master of the complaint,

13   that a federal question must appear on the face of the complaint, and that the plaintiff may, by

14   eschewing claims based on federal law, choose to have the cause heard in state court").

15        In consideration of the foregoing, the Court notes Defendant's arguments regarding

16   ambiguity within the class definition, but there is no support for the position that Defendant's

17   revised definition must guide this Court's analysis.  The Court also does not accept a new

18   definition given by Plaintiffs in their Motion to Remand and Reply, including that the class now

19   excludes all non-California citizens.  The Seventh Circuit has noted that "plaintiffs are free to

20   'circumscribe their class definitions' so that they can fit within one of [the CAFA] exceptions and

21   avoid federal jurisdiction." *In re Sprint Nextel Corp*., 593 F.3d 669, 673 (7th Cir. 2010) (citing

22   *Johnson v. Advance Am.,* 549 F.3d 932, 937 (4th Cir. 2008)).  However, in the SAC Plaintiffs

23   have not defined their class expressly in terms of California citizens, which would require remand

24   by definition.  *See id.* at 676 ("Alternatively, the plaintiffs might have defined their class as all

25   Kansas *citizens* who purchased text messaging from Sprint Nextel or an alleged coconspirator.

26   By using that definition, the plaintiffs could have guaranteed that the suit would remain in state

27   court …").  The Court analyzes the parties' arguments based upon the stated definition in the

28   SAC, with its accompanying ambiguity.  If that ambiguity means Plaintiffs do not establish the

1   home state exception, then remand is not proper.  However, for the reasons stated *infra*, the Court

2   finds that the two arguments made by Plaintiffs, despite this ambiguity, establish that the home

3   state exception applies.

4       B.   Home State Exception

5       First, Plaintiffs argue that common sense supports the inference that this lawsuit involves

6   at least two-thirds of a class composed of California citizens.  (ECF No. 6-1 at 13.)  Plaintiffs

7   underscore that this matter involves: "(1) California citizens (2) suing a California defendant; (3)

8   on behalf of a California class; (4) for violations of California statutes; (5) relating to home

9   delivery subscriptions for California newspapers delivered to California homes."  (ECF No. 10 at

10  5.)  The Court will not simply accept Plaintiffs' assertion regarding (1) citizenship, which would

11  rewrite the SAC's definition.  However, it is not disputed that Defendant is a California citizen,

12  the alleged violations are restricted to California statutes, and the relevant newspapers are local

13  California newspapers.[5]  Specifically, Plaintiffs submit in the SAC that: "The McClatchy

14  Company owns and operates the following California based newspapers: The Sacramento Bee [],

15  the Fresno Bee, the Modesto Bee, the [San Luis Obispo] Tribune, and the Merced Sun-Star."

16  (ECF No. 1-3 ¶ 17.)  Defendant submits that it owns or operates newspapers in other states

17  (Lintecum Decl., ECF No. 7-2) but these newspapers are not referenced in the SAC.

18      In furtherance of their common sense argument, Plaintiffs direct the Court to *Quesada v.*

19  *Herb Thyme Farms, Inc.,* No. CV 11-00016 ODW SSX, 2011 WL 1195952, at *4 (C.D. Cal.

20  Mar. 28, 2011) ("Plaintiff defines the class as '[a]ll persons within the state of California who

21  purchased HerbThyme fresh herbs sold as 'Fresh Organic' but which included some portion of

22  conventionally grown herbs' … Such definition indicates that Plaintiff's proposed class is limited

23  to purchasers within California"); *Rotenberg v. Brain Research Labs LLC,* No. C–09–2914 SC,

24  2009 WL 2984722, at *2–3 (N.D. Cal. Sept.15, 2009) (finding that a complaint asserting claims

25  "only on behalf of California purchasers" and "only of behalf of California residents" led to the

26  _____

    [5] Defendant states that the class might include subscribers with digital or electronic subscriptions, but does
27  not make a specific argument that this possibility would defeat the home state exception.  (ECF No. 7 at 19, f.n. 14.)
    Overall, the SAC and Plaintiffs' briefing appears to refer to subscriptions to home delivery newspapers.  *See e.g.* ECF
28  No. 6-1 at 5 ("This case is a California class action that seeks to remedy fraudulent and deceptive billing for the home
    delivery of local newspapers to California subscribers").

conclusion that the home state exception was satisfied).  Defendant responds that the same judge who authored *Herb Thyme Farms* acknowledged, two years later, that citizenship cannot be presumed from residence.  *See Roth v. CHA Hollywood*, Case No. 2:12-cv-07559-ODW-SHx (Dkt. 48) (C.D. Cal. Sept. 5, 2013) (Def.'s RJN, ECF No. 7-6, Ex. C.)  But that class was composed of employees of the CHA Hollywood Medical Center and involved violations of the California Labor Code and the California UCL; there is not an apparent analogy between that case and the instant one.  Moreover, Plaintiffs are not resting their remand motion upon the argument that California residency equates to California citizenship.  Rather, Plaintiffs just make the point that the facts of this case – involving subscribers to local California newspapers – support a common sense inference that more than two third of those people are California citizens.  "[C]ourts in this Circuit have not shied from making common sense judgments as to the citizenship of purported class members." *Romo v. Panda Rest. Grp., Inc.,* No. CV 12-00996 GAF OPX, 2012 WL 3930346, at *4 (C.D. Cal. Sept. 7, 2012) (referencing *Herb Thyme Farms, supra*; *Flores v. Chevron Corp.,* 2011 WL 2160420 (C.D. Cal. May 31, 2011); *Haynes v. EMC Mortg. Corp.,* 2010 WL 1445650 (N.D. Cal. Apr. 12, 2010)).

Simply put, the Court agrees that it is commonsensical that a class of "[a]ll persons in California" who subscribed to local California newspapers would likely consist of at least two-thirds California citizens.  *See Romo*, 2012 WL 3930346, at *3 ("Plaintiff did not have to identify anyone as a California citizen, he had to demonstrate, by a preponderance, that two-thirds or more of the proposed class are California citizens.  That is, Plaintiff simply had to show it was more likely than not"). *Rodriguez v. Instagram, LLC*, No. C 12-06482 WHA, 2013 WL 3732883, at *2 (N.D. Cal. July 15, 2013) ("This order finds that a consumer class defined as California residents is, by and large, a class of California domiciles and that the aberrated case wherein a California resident is domiciled elsewhere is so rare as to fall far short of the one-third needed to defeat the exception").

Second, Plaintiffs submit an expert declaration from a demographer.  The demographer analyzed "American Community Survey estimates of state-to-state migration during the period 2010–2014" and investigated "the shares of persons living in California in 2010 who did and did

1   not move out of that state between 2010 and 2014."  (ECF No. 6–1 at 13.)  She concluded that

2   more than 90 percent of persons living in California still lived in that state in 2014.  She also

3   concluded that "it is extremely unlikely that at least one third of [Defendant's] newspaper

4   subscribers who subscribed to papers while California residents no longer reside within

5   California."  (ECF No. 6-1 at 13.)

6        Defendant challenges the expert's findings by arguing as follows: she is not competent to

7   testify to this particular subject matter, namely California citizenship; she assumed wrongly in the

8   first instance that subscribers were California citizens and then concludes that only a small

9   portion would have left the state since 2010; her opinion does not take into account that

10  subscribers to newspapers are part of an older demographic; and her conclusions are speculative.

11  (ECF No. 7 at 19–21.)

12        Relative to Defendant's arguments, the Court finds as follows.  Plaintiffs' expert, based on

13  her submitted resume, is qualified to testify to the general migratory patterns of California

14  residents based upon an analysis of the American Community Survey, which Plaintiffs' reason

15  for using her declaration.[6] Plaintiffs' expert, based on the submitted declaration, does not provide

16  an independent basis (other than common sense) for assuming that subscribers were initially

17  California citizens.  Plaintiffs' expert does not discuss the fact that putative class members are

18  part of an "older" demographic.  Overall, Plaintiffs' expert's opinion is not speculative, insofar as

19  her representation is accurate that: "[she] analyzed American Community Survey estimate of

20  state-to-state migration during the period 2010–2014.  Specifically, [she] investigated the shares

21  of persons living in California in 2010 who did and did not move out of that state between 2010

22  and 2014."  (ECF No. 6-3 at 4.)  *See Romo*, 2012 WL 3930346, at *4 (finding the home state

23  exception was supported by a statistical analysis which included data from the American

24  Community Survey).

25

26        [6] Plaintiffs' expert has a PhD in sociology with a specialty in "Demography and Social Stratification".  She
    represents that she "has provided demographic services to school districts and many other types of organizations for
27  many years.  Her specialties include spatial analysis of populations and of U.S. Census data.  She has written articles
    and a book and has made many public presentations. She has testified as an expert and provided litigation support in
28  cases involving various types of jurisdictions."  (ECF No. 6-3 at 6.)

1   Defendant's argument attempts to call into question whether Plaintiffs' expert's

2   declaration, by itself, shows by a preponderance that two-thirds of the proposed class are

3   California citizens.  However, the expert's declaration supports Plaintiffs' commonsense

4   argument.  *See Obrey v. Johnson*, 400 F.3d 691, 695 (9th Cir. 2005) ("A statistical study may fall

5   short of proving the plaintiff's case, but still remain relevant to the issues in dispute").  Further,

6   Defendant has submitted no contrary data that negates this common sense argument.  Defendant

7   states it "has determined that members of the putative class are not citizens of California."  (ECF

8   No. 1 at 8.)  However, Defendant identifies only two: C.M. and D.M., *supra*.  Defendant indicates

9   it has access to information about the residency and/or citizenship of its subscribers.  (McDowell

10   Decl., ECF No. 7-4; Rivera Decl., ECF No. 7-5.)  But Defendant identifies no information about

11   its subscriber base which would cast doubt on the commonsense inference that more than two-

12   thirds of the putative class – defined as "[a]ll persons in California" who subscribed to

13   Defendant's local California newspapers – is composed of California citizens.

14   The Court notes *In re Sprint Nextel Corp*., *supra*, cited by Defendant.  In that case,

15   plaintiffs sought to define a class limited to: "those who (1) had a Kansas cell phone number, (2)

16   received their cell phone bill at a Kansas mailing address, and (3) paid a Kansas 'USF fee,' which

17   is applied to all long-distance calls within Kansas."  *In re Sprint Nextel Corp.,* 593 F.3d at 671.

18   The Seventh Circuit recognized that "[a]ll in all, we're inclined to think that at least two-thirds of

19   those who have Kansas cell phone numbers and use Kansas mailing addresses for their cell phone

20   bills are probably Kansas citizens."  *Id.* at 674.  However, "that's all guesswork … we agree with

21   the majority of district courts that a court may not draw conclusions about the citizenship of class

22   members based on things like their phone numbers and mailing addresses."  *Id.*

23   Defendant does not cite a Ninth Circuit case making the same holding.  Nor has the issue

24   of phone numbers and mailing addresses, as evidence of whether class members are citizens of

25   California, been made a focal issue by the parties.  Defendant rightly points out that numerous

26   Circuits have rejected an equivalence of "residency" to "citizenship."  *See e.g. Kanter*, *supra*; *In*

27   *re Sprint Nextel Corp, supra*; *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974).  However, there

28   is no express statement of "residency" within the SAC's class definition.  Nor are Plaintiff's

11

1  arguments in support of remand reliant upon residency.  Plaintiffs have stated variously that the

2  phrase "[a]ll persons in California" means persons located in California, residents of California,

3  or citizens of California.  So it is inaccurate to impute to Plaintiffs the argument that this CAFA

4  exception depends upon California residency.

5          In conclusion, the Court finds that based upon the class definition in the SAC, the three

6  causes of action (all stating violations of California statutes) in the SAC, Plaintiffs' expert

7  declaration, the additional clarification given by Plaintiffs in their Motion to Remand, and

8  common sense, Plaintiffs demonstrate by a preponderance of the evidence that two thirds or more

9  of the putative class consists of California citizens.  Therefore, this action must be remanded.  28

10  U.S.C. § 1332(d)(4)(B).[7]

11          C.      Request for Costs

12          Plaintiffs request reimbursement for costs incurred in relation to Plaintiffs' Motion to

13  Remand, pursuant to 28 U.S.C. § 1447(c).  Such costs may be granted when a defendant lacked

14  an "objectively reasonable" basis for removal.  *Martin v. Franklin Capital Corp.*, 546 U.S. 132,

15  141 (2005).

16          In this case, Defendant lacked an objectively reasonable basis for removal.  The

17  requirements for the home state exception are clearly stated in 28 U.S.C. § 1332(b)(4)(B).  This

18  action involves: alleged violations of California statutes, named Plaintiffs who at all relevant

19  times resided in Sacramento and who it appears are California citizens (ECF No. 1-3 ¶¶ 8–11), a

20  Defendant that is a California citizen, subscriptions to local California newspapers, and a class

21  defined in relevant part as "[a]ll persons in California."   No common sense reading of that group

22  of people would place its composition at less than two thirds California citizens.  Defendant has

23  actually supported Plaintiffs' position by identifying only *two* possible class members who are not

24  California citizens, despite its apparent possession of information about its own subscribers.

25

26          [7] In their Reply, Plaintiffs also argue: 1) that if the class definition is presently unclear, they should be
granted leave to amend, *Wickens v. Blue Cross of California, Inc.,* 2015 WL 3796272 (S.D. Cal. June 18, 2015); and

27  2) this Court should exercise its discretion to decline jurisdiction under 28 U.S.C. § 1332(d)(3).  Defendant objects
that these new issues were unfairly raised in the Reply for the first time.  (ECF No. 12.)  The Court need not address
Plaintiffs' new arguments in order to find remand proper, and does not consider these arguments.  Therefore,

28  Defendant's objection is DENIED AS MOOT.

1    Defendant was apprised of the same argument Plaintiff now makes regarding the home state

2    exception, shortly after removal occurred.  *See* ECF No. 6-2 at 6 (letter from Plaintiffs' counsel

3    requesting that the removal be withdrawn in order to avoid costs associated with jurisdictional

4    discovery or hiring a migration/census expert, and explaining the implausibility of Defendant's

5    argument).  That request was rejected by Defendant, resulting in increased costs to Plaintiffs and

6    an unnecessary burden on this Court's docket.

7          At the time of Plaintiffs' Motion to Remand, Plaintiffs approximated the costs incurred as

8    a result of hiring their expert demographer to be $4000.00, although an exact amount was not

9    known.  It appears that estimate does not include other costs associated with removal.  Defendant

10   does not address this estimate in its Opposition.  The Court finds $4000.00 is an appropriate

11   amount and shall be granted to Plaintiffs for costs incurred as a result of Defendant's objectively

12   unreasonable removal.  *Martin*, 546 U.S. at 141.

13         **IV.    Conclusion**

14         For the foregoing reasons:

15   •    Plaintiffs' Motion to Remand (ECF No. 6) is GRANTED, and this matter is remanded

16         to the Sacramento County Superior Court;

17   •    Defendant's Motion to Dismiss (ECF No. 4) is DENIED as MOOT;

18   •    Plaintiffs' Requests for Costs is GRANTED in the amount of $4000.00;

19   •    The Clerk of the Court is directed to close the case.

20   Dated: June 6, 2016

21

22

23                                                  _____

24                                                  Troy L. Nunley
                                                    United States District Judge
25

26

27

28

                                                  13